### DEVANBAGH vs. DEVANBAGH.

A sentence of nullity, declaring a marriage invalid on the ground of the physical incapacity of the defendant cannot be pronounced, upon a bill taken as confessed for want of an appearance or answer, without examining the defendant on oath before the master to whom it is referred to take the proofs of the facts and circumstances stated in the complainant's bill.

To authorize a sentence of nullity, the physical incapacity of the defendant must have existed at the time of the marriage, and must be incurable ; and both these facts must be established by the most satisfactory evidence, although they are admitted by the defendant.

The court of chancery will not decree a marriage void on the ground of the impotence of the defendant, until a surgical examination has been had for the purpose of ascertaining whether the alleged incapacity is incurable, if such defendant is within the jurisdiction of the court.

Upon a bill filed to annul a marriage on the ground of impotence, the court has the necessary power, and will compel the parties to submit to such a surgical or other examination as may be necessary to ascertain the facts necessary to a correct decision of the cause ; but in a suit brought against a female, the court will not compel her to submit to a further examination, if it appears that she has been already sufficiently examined by competent surgeons, whose testimony can be obtained by the complainant, to show that her physical incapacity is incurable.

March 15.    THE object of this suit was to obtain a decree declaring the marriage contract between the parties a nullity, on account of the alleged impotence of the wife. The bill was filed by the husband, in January, 1835, about fifteen months after the solemnization of the supposed marriage, and was duly verified by the oath of the complainant, as required by the 163d rule of the court. The complainant alleged, among other things, that the marriage was solemnized in this state, where both of the parties then resided, and where they continued to reside ; he believing, from the dress, appearance and representations of the defendant, that she was a woman capable of entering into the marriage state, and of performing all the duties and relations of a wife ; that he took her to his residence, and for the space of six months endeavored to cohabit with her as his wife, until he ascertained and became satisfied, both from his own knowledge and from her admissions and confessions, that she was and ever had been physically

incapable of cohabitation or sexual intercourse, or of entering into the marriage state. The bill was taken as confessed against the defendant, for not appearing ; and the complainant thereupon applied to the court for a reference to ascertain the truth of the matters charged in the bill, and for special directions to the master as to the manner in which the impotence of the defendant was to be ascertained, and as to the nature and kind of proof which should be required by the master to ascertain the fact.

*Israel Williams,* for the complainant.

THE CHANCELLOR. The revised statutes have authorized a proceeding of this kind, at the suit of the injured party, against the party whose incapacity is alleged. But it is expressly declared that no sentence of nullity shall be pronounced solely on the confessions or declarations of the parties ; and the court is in all cases to require other satisfactory evidence of the existence of the facts on which the allegation of nullity is founded. This last provision was absolutely necessary to guard against fraud and collusion in such cases, and is strictly in accordance with the requirements of the ecclesiastical or canon law. The 105th canon, after reciting that matrimonial causes required the greatest caution where the marriage was sought to be dissolved or annulled upon any suggestion or pretext whatever, concludes as follows : "We do strictly charge and enjoin, that in all proceedings to divorce and nullities of matrimony, good circumspection and advice be used ; and that the truth, as far as is possible, be sifted out by the depositions of witnesses and other lawful proofs and evictions ; and that credit be not given to the sole confessions of the parties themselves, howsoever taken upon oath, either within or without the court." The revised statutes also provide that suits to annul a marriage shall be by bill, and shall be conducted in the same manner as other suits prosecuted in courts of equity ; and that the court shall have the same power to award issues, to decree costs, and to enforce its decrees, as in other cases. (2 *R. S.* 144, § 35.) But as the awarding of a feigned issue, to ascertain the fact of the

physical incapacity of the defendant, would, from the very nature of the investigation to be had, and the evidence necessary to ascertain the fact, be an impracticable as well as an inexpedient mode of proceeding, such cases are very properly excepted from the general provision of the statute requiring all issues upon the legality of a marriage to be tried by a jury of the country. (2 *R. S.* 175, § 45.) When the legislature conferred this branch of its jurisdiction upon the court of chancery, it was not intended to adopt a different principle from that which had theretofore existed in England, and indeed in all christian countries, as to the nature and extent of the physical incapacity which would deprive one of the parties of the power to contract matrimony. And the court is, by necessary implication, armed with all the usual powers which, in that country from which our laws are principally derived, are deemed requisite to ascertain the fact of incapacity, and without which it would be impossible for any court to exercise such a jurisdiction. It becomes necessary, therefore, to inquire, in the first place, as to the nature and extent of the incapacity which will authorize the court to decree the marriage contract a nullity, and then to determine what proof is necessary, or should be required, to establish the fact of such incapacity.

By the English law, as it existed at the first settlement of this country, and as it now exists, to authorize a sentence of nullity on the ground of impotence, it is necessary for the complainant to establish the fact of the existence of the alleged incapacity at the time of the marriage, and that such incapacity still continues and is incurable. (*See* 1 *Chitty's Med. Jurisp.* 375 ; *Law of Husb. & Wife,* 16 ; *Brown* v. *Brown,* 1 *Hagg. Eccl. Rep.* 523 ; *Welde* v. *Welde,* 2 *Lee's Eccl. Ca.* 580.) This also appears to be the law of France, and of Spain, and Holland. And it is probably the law of the continent of Europe generally. (*See* 1 *Beck's Med. Jurisp.* 5th ed. 68 ; 4 *Partida, tit.* 8, *Law,* 2 ; *Van Leeuw. Com.* 87.) And such is the construction which I feel myself bound to put upon the statute of this state, authorizing this court to decree the nullity of a marriage contract, on account of the

physical incapacity of the defendant to consummate the marriage.

Impotence on the part of the female, which cannot be cured by proper medical treatment or a surgical operation, is a case of very rare occurrence. And the cases of this kind which will be likely to come before this court for adjudication, on the complaint of the husband, will be limited to cases of an impervious, or supposed impervious vagina, from an original malformation, or the effect of some supervening infirmity or disease, as mere sterility can in no case form a sufficient ground for a decree of nullity. Doctor Beck, in the last edition of his very learned and most valuable work on the subject of medical jurisprudence, after an elaborate examination of the various cases of absolute and temporary incapacity for sexual intercourse, in both sexes, which have been noted or referred to by medical writers, and others, arrives at the conclusion, from a review of the causes of such incapacity, that the cases of absolute or incurable impotence are very few, and are generally palpable to the senses, and that the number of cases which were formerly assigned to that class has been greatly reduced by the improvements in surgery. (1 *Beck's Med. Jurisp.* 89.) In every case of this kind, therefore, it is necessary that the court should proceed with the greatest vigilance and care, not only to prevent fraud and collusion by the parties, but also to guard against an honest mistake under which they may be acting, merely from the want of proper medical advice and assistance. From the very nature of the case, it appears to be impossible to ascertain the fact of incurable impotence, especially where the husband is the complaining party, except by a proper surgical examination by skilful and competent surgeons, in connection with other testimony. And if the allegations in the bill have neither been admitted or denied by an answer on oath, in the usual manner, the defendant should be examined on oath before the master as to the truth of those allegations. This appears to be the ordinary course of proceedings in such cases at Doctors' Commons. (*See Poynter's Mar. & Div.* 126, *note.*) And I have no doubt as to the power of-this court to compel the parties, in such a suit, to submit to a surgical examina-

tion, whenever it is necessary to ascertain facts which are essential to the proper decision of the cause. But a lady will not be compelled to submit to a further examination, when it appears that she has already submitted herself to the examination of competent surgeons, whose testimony can be readily obtained. (*See* 1 *Hagg. Eccl. Rep.* 524, *note.*) Investigations of this kind are always indelicate, and the mode of proof to which resort must of necessity be had, must frequently be very distressing to the feelings of parties. It would, therefore, in most cases, be better that the party complaining should submit to a disappointment, and by an amicable arrangement agree to separate, rather than to bring the cause before a court for its decision thereon. This court, however, is not at liberty to decline jurisdiction in such a case, but must proceed to the examination and decision thereof in the manner required by law, if the injured party thinks proper to insist upon his legal rights.

There must be a reference to a master to take proof of the facts and circumstances stated in the complainant's bill; and particularly, the master must inquire and report whether the defendant, at the time of the solemnization of the marriage with the complainant, was physically incapable of entering into the marriage state, and whether she is still *virgo intacta,* and incapable of consummating the marriage contract, by reason of her own incurable impotence. The order of reference must also direct that the master examine the defendant on oath as to the several matters alleged in the bill, and that the defendant submit herself to such surgical examinations, and examination by matrons, as the master may think proper to direct, for the purpose of ascertaining the fact of the alleged impotence; but that no person shall be present at such examinations, except the surgeons and matrons who may be selected by the master for that purpose, unless with her consent; and that in the selection of surgeons and matrons for that purpose, the master have a due regard to the feelings and wishes of the defendant. The master is also to be directed to return the proofs, taken before him, in a schedule to his report. No person is permitted to be present before the master, on the reference, except the parties and their counsel, and witnesses; and such of the friends of either of the par-

ties, as they, or either of them, may request to attend on the reference. And the complainant, under the direction of the master, must furnish the necessary funds to pay the expenses of the surgical examination of the defendant, if a sufficient and satisfactory examination has not already been made.