ADALINE R. ROBERTS, Appellant, *v.* THE OGDENS-
    BURGH AND LAKE CHAMPLAIN RAILROAD
    COMPANY, Respondent.

*Evidence in an action for damages caused by defendant's negligence — a party cannot
be compelled to submit her person to the examination of physicians selected by her
adversary.*

The plaintiff brought this action to recover damages for injuries arising from the
    alleged negligence of the defendant, in moving a train of cars on which she
    was a passenger.   After issue joined, an order was made, upon the defendant's
    application, requiring the plaintiff to submit to an examination of her person
    by three physicians, named in the order and selected by the defendant, under
    the direction of a referee therein named.   It provided that such other physi-
    cians as the plaintiff might desire might be present, and that at the examina-
    tion she should answer such questions as should be put to her touching her
    then present sensations, by the physicians selected by the defendant.
*Held,* that the court had no power to make the order.
*Walsh* v. *Sayre* (52 How., 334); *Shaw* v. *Van Rensselaer* (60 id., 143); *Schroeder* v.
    *Chicago, Rock Island and Pacific Railroad* (47 Iowa [19 Alb. L. J.], 234), criti-
    cized and not followed.

Appeal from an order made at a Special Term directing the
plaintiff to submit to an examination of her person by physicians
selected by the defendant, under the supervision of a referee, to
ascertain whether she was suffering as she alleged from injuries
caused by the alleged negligence of the defendant.

The action was begun November 4, 1882.   The complaint alleged
that the plaintiff was injured in July, 1881, while riding as a passenger
on the defendant's railroad by reason of a collision of the car she
was in, with other cars, caused by the negligence of the defendant
and its employes.

The defendant claimed that no serious, if any, injury was received
by her, and that she was either feigning sickness or was suffering
from a disease not caused by the alleged accident.

*S. A. Kellogg,* for the appellant.

*Louis Hasbrouck,* for the respondent.

LEARNED, P. J.:

This is an action to recover damages for injuries arising from alleged negligence of defendant in moving a train of cars on which plaintiff was a passenger. An issue has been joined by defendant's answer, denying the negligence and the injury. Upon affidavits the defendant applied for, and obtained, an order that the plaintiff should submit to an examination of her person by three physicians, named in the order and selected by defendant under the direction of a referee therein named: that such physicians as plaintiff desired might be present: that, at the examination, she should answer such questions as should be put to her touching her then present sensations by the physicians for the defendant. From that order the plaintiff appeals.

The order is so unusual that we may well inquire upon what authority of precedent or principle it rests. For precedent the defendant cites, what is called the leading case of *Walsh* v. *Sayre* (52 How. Pr., 334). That case was decided by the Special Term of the Superior Court of New York, in 1868, and was reported in 1877. The action was for malpractice and the motion by the defendant was that the plaintiff submit to a personal examination by surgeons.

The opinion states that there is no recorded case of an application for any such discovery having been granted. And the decision is based upon the analogy to discovery in chancery. We see no analogy whatever between the production of books and papers or the examination of a party by a bill of discovery, and the compelling of a party to expose his person to the inspection of physicians.

In *Shaw* v. *Van Rensselaer* (60 How. Pr , 143) the application for an inspection of the plaintiff's person was denied. The Special Term of the Common Pleas however expressed an opinion *obiter* that it had the power to grant it; and referred among other cases, to *Harrold* v. *New York Elevated Railroad* (21 Hun, 268). But that case speaks only of the examination of a party as a witness before trial, not of an examination or inspection of his person.

In *Schroeder* v. *Chicago, Rock Island and Pacific Railroad* (47 Iowa [19 Alb. L. J.], 234), the doctrine contended for by the defendants here was sustained. The opinion cites no precedent or authority.

A memorandum in 5 Law Bulletin, 8, states that, in the case of *Osborn* v. *Manhattan Railroad Company*, the Special Term of the Common Pleas granted such an order.

These are the only authorities directly sustaining this order.

In *Devanbagh* v. *Devanbagh* (5 Paige, 554) in an action for divorce against the wife on the ground of her incurable impotency, the chancellor held that, in such a suit, he had power to compel the parties to submit to a surgical examination; placing the opinion on the ground that, from the very nature of the case, other proof was impossible. But this is a peculiarity, arising in that class of cases, from the necessity of the case. (2 Bishop Marr., § 590 [250].) Whatever may be the rule in such actions for divorce, nothing which is there said applies to this case. No such necessity exists. The injuries, if any, suffered by the plaintiff can be proved by ordinary, common law evidence; as similar injuries are proved every day.

The other instances thought by the defendant to be analogous, are the trial by inspection and the writ *de ventre inspiciendo*. An examination of 3 Blackstone's Commentary, 331, will show that the trial by inspection was a trial by the judges, not by a jury, of some single matter, obvious to sight; except in appeals of mayhem, which are matters long obsolete. No analogy exists between those proceedings and the present.

The writ *de ventre inspiciendo* (1 Black Com., 456; taken by the English law from the Roman Dig. 25, 4, 1, 10, and made indecent in the taking), has long become obsolete. If it shows anything in the present case, its disuse shows that such an invasion of the sacredness of the person, as is here proposed, cannot be permitted at this day.

Thus the whole authority for this order rests, in the way of precedent, on the Special Term cases above cited.

On the other hand the General Term of the Superior Court in *Ansen* v. *Tuska* (19 Abb., 391) refused to compel a party to submit articles, which were the subject of the controversy, to the inspection of his adversary in order to enable experts the better to testify in respect thereto.

The same view is taken in *Miner* v. *Gardiner* (4 Hun, 132), where the court refused to compel an inspection of books, asked for in order

that an expert, from their appearance, might testify to the value of keeping them.

Passing from the subject of precedent to that of principle, we think this order should not be sustained. That part which requires the plaintiff to answer questions put to her is especially objectionable. It is merely inquisitorial. Her answers are not evidence for herself, but might be used against her. The only mode of taking the testimony of a party before the trial is that prescribed in section 870 of the Code of Civil Procedure and the following sections. This proceeding is quite different. Here the party is required to answer questions put, not by the opposing party, but by any of three physicians, whether relevant or not. (See § 880.) And instead of the deposition being written and subscribed (same section) it is probably intended that these three physicians shall, on the trial, give, if desired, testimony as to what the plaintiff said on this compulsory questioning. What are called "fishing excursions" of parties before a trial have often been condemned. Nothing could be as bad however as to require a party to answer every question which might be put, with no right of explanation, and with no obligation on the examining party to make any use whatever of the examination.

But again, passing over such cases as that of *Devanbagh* v. *Devanbagh*, we know of no right which this court has to compel a party to submit to any bodily examination. In a common law action like this, the jury are to pass on the issues of fact. And they are entitled to see and hear for themselves the evidence. It is of the very essence of the common law system that the evidence shall be produced before the jury. Exceptions to this rule (and not desirable exceptions) are those cases in which evidence is previously reduced to writing, and then read to the jury. Now if a party is entitled to the compulsory exhibition of the body of his opponent, it would seem to follow that he might have such exhibition made before the jury. And the court might require the plaintiff, on the trial and before the jury, to submit to the same examination as is required by this order.

It is undoubtedly true that not unfrequently plaintiffs, suing for bodily injuries, do exhibit in court the injured part. Nor do we know of any reason why they should not do this; notwithstanding the exhibition may excite sympathy. And, on the other hand, all

unreasonable concealment of an injured part (not justified by any dictate of modesty or otherwise) may excite a doubt in the mind of the jury as to the genuineness or extent of the alleged injury. But we cannot admit the principle that, either in the presence of the jury, or in the presence of a referee, a party can compel his opponent to exhibit his body in order to enable physicians to examine and question and testify.

Section 834 of the Code, forbidding a physician to testify to information obtained while attending a patient, necessary to enable him to act, is not strictly applicable to the question now under consideration. But, if the law will not permit a physician, voluntarily consulted, to reveal what he has learned, can it be that the law will compel a party to reveal, by exposure of the body and by answers to questions, facts to a physician, to which he may afterwards testify in court?

There may be danger that in actions of this nature plaintiffs will exaggerate the injuries they have received; and that defendants may be at a disadvantage in ascertaining the exact truth. But this evil is far less than the adoption of a system of bodily, and perhaps immodest, examinations, which might deter many, especially women, from ever commencing actions, however great the injuries they had sustained.

The order is reversed with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.

Present — LEARNED, P. J., BOARDMAN and BOOKES, JJ.

Order reversed with ten dollars costs and printing disbursements, and motion denied, with ten dollars costs.