JOSÉ MARÍA APONTE Y SILVA, Petitioner, *v.* DISTRICT COURT OF MAYAGÜEZ, Respondent.

No. 610.    Argued April 19, 1928.—Decided July 24, 1928.

*Juan Alemañy Sosa* for the petitioner.    *Oscar Souffront* for the defendant.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

José María Aponte y Silva brought an action in the District Court of Mayagüez against Félix Ramón Jurado to recover for damages caused him by the defendant in his negli-

gent management of an automobile. The complaint asserts two causes of action. It is alleged in the first that as a consequence of the accident the plaintiff suffered injuries in his cranium, in his renal region, in his spine with hemorrhage within the spinal cavity and other less serious injuries. It is alleged in the second that when the plaintiff was taken wounded to his home his wife, Isabel Lenoir who was in the sixth month of pregnancy, suffered such great nervous excitement that she began to feel chills, uterine contractions and signs of hemorrhage, having to be submitted immediately to medical treatment, notwithstanding which she became worse and had to be taken to a hospital where by an operation the foetus, already dead and decomposed, was removed. The foregoing facts are simply an epitome of the allegations of the complaint.

On being summoned the defendant demurred to the complaint and moved for the elimination of certain of its particulars. Before the questions raised had been determined the said defendant presented a motion to the court saying that he was disposed to answer the complaint as soon as the motion to strike should be ruled on and he had had an opportunity of securing the physical examination of the plaintiff and his wife by two medical experts designated by him in order to determine the nature of the injuries suffered, wherefore he moved the court to issue the corresponding order. The plaintiff objected and the court ruled as follows:

"After a consideration of the motion filed in this suit by the defendant to require plaintiff José María Aponte y Silva and his wife Isabel Lenoir to submit to physical examinations by Dr. Pedro Perea Fajardo and Dr. Manuel Guzmán Rodríguez Jr., for the purpose of enabling the defendant in answering the complaint to understand the extent of the injuries suffered by the plaintiff and his wife by reason of the accident alleged in the complaint, and considering the objection made by the plaintiff through his attorney Juan Alemañy Sosa, and after argument on said motion in open court, in view of the allegation of the complaint of permanent injuries suffered by the plaintiff and his wife as well as of the claim that such

injuries can only be determined by medical experts, the court sustains the motion of the defendant and orders that plaintiff José María Aponte y Silva and his wife Isabel Lenoir submit to a physical examination in this city of Mayagüez in the clinic of Dr. Pedro Perea Fajardo on the 24th of this month of March at 9 a. m., which examination shall be made by Drs. Pedro Perea Fajardo and Manuel Guzmán Rodríguez Jr., the said plaintiff and his wife being entitled to have present during said examination their attorney and one or two physicians to be designated by them, but neither the said attorney nor the physician or physicians shall have any right of intervention in the said examination.

"The proceedings in this action are stayed until the plaintiff and his wife are submitted to the said physical examination and the defendant will have twenty days from the date of the examination for answering the complaint."

Thereupon the plaintiff petitioned this Supreme Court to issue a writ of certiorari, review the proceedings and set aside the order of the district court.

The writ was issued and thus this question, which has been the origin of hundreds of opinions, was submitted to our consideration and determination.

In 1891 the Supreme Court of the United States, in a lengthy opinion delivered by Mr. Justice Gray, said:

"The single question presented by this record is whether, in a civil action for an injury to the person, the court, on application of the defendant, and in advance of the trial, may order the plaintiff without his or her consent, to submit to a surgical examination as to the extent of the injury sued for. We concur with the Circuit Court in holding that it had no legal right or power to make and enforce such an order.

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.' Cooley on Torts, 29.

"For instance, not only wearing apparel, but a watch or a jewel, worn on the person, is, for the time being, privileged from being

taken under distress for rent, or attachment on mesne process, or execution for debt, or writ of replevin. 3 Bl. Com. 8; *Sunbolf* v. *Alford,* 3 M. & W. 248, 253, 254; *Mack* v. *Parks,* 8 Gray, 517; *Maxham* v. *Day,* 16 Gray, 213.

"The inviolability of the person is as much involved by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country.

"In former times, the English courts of common law might, if they saw fit, try by inspection or examination, without the aid of a jury, the question of the infancy, or of the identity of a party; or, on an appeal of maihem, the issue of maihem or no maihem; and, in an action of trespass for maihem, or for an atrocious battery, might, after a verdict for the plaintiff, and on his motion, and upon their own inspection of the wound, *super visum vulneris,* increase the damages at their discretion. In each of those exceptional cases, as Blackstone tells us, 'it is not thought necessary to summon a jury to decide it,' because 'the fact, from its nature, must be evident to the court, either from ocular demonstration or other irrefragable proof,' and, therefore, 'the law departs from its usual resort, the verdict of twelve men, and relies on the judgment of the court alone.' The inspection was not had for the purpose of submitting the result to the jury, but the question was thought too easy of decision to need submission to a jury at all. 3 Bl. Com. 331–333.

. "The authority of courts of divorce, in determining a question of impotence as affecting the validity of a marriage, to order an inspection by surgeons of the person of either party, rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction; and is derived from the civil and common law, as administered in spiritual and ecclesiastical courts, not proceeding in any respect according to the course of the common law. *Briggs* v. *Morgan,* 2 Hagg. Con. 324; S. C. 3 Phillimore, 325; *Devanbagh* v. *Devanbagh,* 5 Paige, 554; *Le Barron* v. *Le Barron,* 35 *Vermont,* 365.

"The writ *de ventre inspiciendo*, to ascertain whether a woman convicted of a capital crime was quick with child, was allowed by the common law, in order to guard against the taking of the life of an unborn child for the crime of the mother.

"The only purpose, we believe, for which the like writ was allowed by the common law, in a matter of civil right, was to protect the rightful succession to the property of a deceased person against fraudulent claims of bastards, when a widow was suspected to feign herself with child in order to produce a supposititous heir to the estate, in which case the heir or devisee might have this writ to examine whether she was with child or not, and, if she was, to keep her under proper restraint till delivered. 1 Bl. Com. 456; Bac. Ab. Bastard, A. In cases of that class, the writ has been used in England in quite recent times. *In re Blakemore*, 14 Law Journal (N.S.) Ch. 336. But the learning and research of the counsel for the plaintiff in error have failed to produce an instance of its ever having been considered, in any part of the United States, as suited to the habits and condition of the people." *Union Pacific Railway Co.* v. *Bostford*, 141 U. S. 250.

Since then that rule has been followed by the federal courts, except those functioning in states where the examination is authorized by the local law.

In the different states of the Union the criterion of the courts is greatly divided. The point of view favorable to the examination has been stated by the Supreme Court of California in the case of *Johnston* v. *Southern Pacific Co.*, 150 Cal. 535, as follows:

"Plaintiff offered proof touching the nature of her injuries, that it had been necessary to remove a portion of the skull. Physicians were called on her behalf to testify to this and to other matters of personal injury connected with it. The case presented was that of a plaintiff complaining of and seeking damages for objective physical injuries. Defendant requested of plaintiff that an opportunity be offered it to have a physical examination of the person of the plaintiff to be conducted by two physicians, plaintiff being permitted to have her own physicians present and to select a reasonable place for the examination. This application was first made in the form of a request to plaintiff, and was refused by her attorneys. It was then addressed to the discretion of the court, and an order was

asked to that effect. No objection was made that the application was not timely; that the physicians selected were not reputable; or that the circumstances in any way or for any reason were other than modest and proper. Indeed, the court in ruling, as shown by the record, declared that if the authorities bore out defendant's contention, it would make the order. Its refusal to make the order, therefore, was founded upon the belief that it was powerless so to do. This is the first time this question has come before the court for adjudication, and what is here said must be regarded as applicable strictly to civil actions. It is a principle of criminal law that the defendant may not be compelled to give evidence against himself. In civil actions, where a plaintiff is seeking affirmative relief, the adverse party may compel him to give such evidence even to becoming a witness. As to the power of a court to order such examination in proper cases, the overwhelming weight of authority is that it exists. The supreme court of the United States substantially alone has denied the power in *Railroad Co.* v. *Botsford,* 141 U. S. 250, [11 Sup. Ct. 1000]. In *Brown* v. *Chicago etc. Ry. Co.,* 12 N. Dak. 61, [102 Am. St. Rep. 564, 95 N. W. 153], the Botsford case is reviewed. It is said that it is not authority in a state court, and that the reason of the rule as to federal courts comes from the fact that all United States courts other than the supreme court must in the absence of statutes follow the mode of proof as it existed in its actions at common law. In *Camden etc. Ry. Co.* v. *Stetson,* 177 U. S. 172, [20 Sup. Ct. 617], is found another modification of the rule as declared in the Botsford case, it being held that the practice of the particular state will govern the federal procedure. Upon this an order of the circuit court directing a physical examination of plaintiff was affirmed. By the state courts, however, with unusual unanimity, it is held that courts have the power to order such examinations, and should exercise it with a sound discretion. In some states, as in New York, the matter is controlled by statute, but where it is not a matter of statute the courts are singularly uniform in declaring the existence of the power. In but four states— namely, Illinois, Massachusetts, Texas, and Montana—is the power denied. It was denied in New York, but has been granted by statutory enactment. Our Code of Civil Procedure (sec. 128, subd. 5) prescribes that 'Every court shall have power: . . . . . . To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto.' Under a statute identical in terms with this, it was held by the supreme court of

Georgia that if statutory authority was necessary for the making of such an order it is here found. (*Richmond etc. R. R. Co.* v. *Childress*, 82 Ga. 719, [14 Am. St. Rep. 189, 8 S. E. 602].) . Says the supreme court of Minnesota: 'To allow the plaintiff in such cases to call in as many friendly physicians as he pleases, and have them examine his person and then produce them as expert witnesses upon the trial, but at the same time to deny the defendant the right in any case to have a physical examination of plaintiff's person and leave him wholly at the mercy of such witnesses as the plaintiff sees fit to call constitutes a denial of justice too gross in our judgment to be tolerated for one moment.' (*Wanek* v. *City of Winona,* 78 Minn. 98, [79 Am. St. Rep. 354, 80 N. W. 851].) Says the supreme court of Indiana in *City of South Bend* v. *Turner,* 156 Ind. 418, [83 Am. St. Rep. 200, 60 N. E. 275]: 'When serious and permanent injuries are claimed by the plaintiff, and he or she has submitted to an examination by a chosen physician or surgeon, who appears as a witness in plaintiff's behalf, and the nature, extent and effect of the injury are to be deduced from objective conditions, and so fully from no other source, no degree of sentiment will justify the refusal of the motion. When it becomes a question of probable violence to the refined and delicate feelings of the plaintiff, on the one hand, and probable injustice to the defendant on the other, the law will not hesitate; the court in making such orders in respect to time, place and person, in every case having such due regard for the feelings of the plaintiff and proprieties of the case as the ends of justice will permit.' To the same effect may be cited: . . . . . . In the case at bar, as has been said, the court refused the application for lack of power. We are not left in doubt as to what its action would have been had it believed it possessed the power, for the record discloses that the court believed it to be a proper case. Such an error so clearly affecting the substantial rights of the defendant necessitates a reversal of the action." 150 Cal. 540–543.

Corpus Juris summarizes the jurisprudence as follows:

"According to the view adopted by what is perhaps the greater number of jurisdictions, it is within the power of the court, in an action for damages for personal injuries, to require the injured person to submit to a physical examination for the purpose of determining the extent of the injury. However, in other jurisdictions, the power is held not to exist, unless plaintiff consents thereto. While there is some authority to the effect that an examination must be awarded as a matter of right, the rule supported by the weight of

authority is that, in the absence of statute, the matter rests in the sound discretion of the trial court which is to be exercised in the furtherance of justice, and each case is governed largely by its own facts. In some jurisdictions the question of physical examination of plaintiff in actions for damages is the subject of specific statutory enactment. Such statutes have been held to be within the constitutional authority of the legislature. The examination should be so conducted as to subject plaintiff to no unnecessary annoyance or exposure, and the order directing an examination must affirmatively show that plaintiff's rights were properly safeguarded. The application should be based on an affidavit showing that knowledge of necessary and material facts in respect to plaintiff's injuries or condition can be acquired only by such examination. So an examination will not be ordered where there is abundant evidence of the extent of the injury, or where its nature is not seriously questioned, or where the examination requested may injure or imperil the health of plaintiff, or cause serious pain. An examination requiring the administration of anaesthetics will ordinarily be refused where plaintiff objects. Where an injury is not apparent and its existence in fact is disputed, it has been held an abuse of discretion to allow plaintiff to testify to the injury and to its permanent character without allowing other competent and specially skilled witnesses to make an examination and to demonstrate, if they are able, that there is in fact no injury.'' 17 C. J. 1052–1055, Sec. 357.

The question is really of great importance and involves opposed rights. There is no doubt that a majority of the supreme courts of the States have held for the affirmative, but that the weight of the authorities is in favor of the right to order the examination against the will of the person to be examined is questionable.

There is no law in Porto Rico expressly authorizing the examination. The parties have cited no decision of this court upholding it. Therefore, this is the time when the course to be followed in this jurisdiction should be marked and after careful consideration we are of the opinion that preference should be given to the rule establishing the right of a person not to be examined against his will stated so admirably and convincingly in the opinion of the national Supreme Court

cited. That rule is more in harmony with personal dignity the level of which should be raised by constant effort.

It is true that there may be cases in which degenerate persons may invoke hypocritically the sentiment of personal dignity to support a bad cause. However, it would be very difficult in such cases to deceive the court. The real moral being of the litigant, inspirer of credit or generator of distrust, generally arises from the evidence. The risk incurred by authorizing the examination is greater, because just as there may be unworthy litigants and experts capable of conspiring to exploit another person by feigning injuries and sufferings which do not really exist, there are persons who are so honest that they would rather lose any of their rights if in order to enforce them they had to submit their bodies to be examined by outside experts designated by a court at the request of an adverse party.

The order complained of by the petitioner must be set aside and the case remanded to the district court for further proceedings not inconsistent with this opinion.