## Spannuth v. Spannuth

*Metzger & Wickersham*, for libellant.
*P. W. Fetterhoff*, for respondent.

HARGEST, P. J., December 20, 1935.—The libel in this case charges impotency, and the libellant has presented his petition asking the court to order a physical examination of the respondent to determine the fact. The respondent denies the fact and also resists the order on the grounds (1) that the court has no power to make it; and (2) that it should not be made on account of the age of the parties.

The Divorce Law of May 2, 1929, P. L. 1237, 23 PS §10, provides that a divorce may be granted if it shall be judged that the other spouse: "At the time of the contract, was and still is naturally and incurably impotent, or incapable of procreation".

While a divorce may be granted on the ground of impotency on the uncorroborated testimony of the libellant: Christman v. Christman, 7 Pa. C. C. 595; yet unequivocal proof should be required where the respondent insists, as in the instant case, that she is not so incapacitated, and is the mother of two children by a former marriage: Farnsworth v. Farnsworth, 75 Pa. Superior Ct. 400.

The question of the power of the court is an interesting

one, and the authorities are not in accord. Courts usually do not make orders which cannot be enforced. Whether the court has the power to enforce such an order is a question of first impression in this State. In the case of A. C. v. B. C., 11 W. N. C. 479, the court ordered a wife to submit herself to a personal examination by physicians without any discussion of the power of the court, and that question apparently was not raised.

However, in the case of Haas v. Haas, 26 Dist. R. 731, it is held that the court would not make such an order because "The only manner in which an order of court could be enforced would be by commitment for contempt, and to this extreme we apprehend the courts would be very loath to go."

The respondent contends that the rules of law applicable in this case are the same as those which have been applied to applications for physical examinations in personal injury cases. It is well settled in Pennsylvania that the applications for examination in such cases are in the sound discretion of the court, but they cannot be enforced by any affirmative order against a plaintiff requiring him to submit to such examination. The control which the court keeps over such an order, however, is that it may refuse to permit the case to proceed until the order has been complied with: Heilig v. Harrisburg Rys. Co., 17 D. & C. 509; Stasko et ux. v. Smith, 16 D. & C. 726; Cohen v. P. R. T. Co., 250 Pa. 15; Twinn v. Noble, 270 Pa. 500; Schroth et ux. v. P. R. T. Co., 280 Pa. 36.

In Commonwealth v. Morris, 22 D. & C. 111, an application by the defendant to compel a prosecutrix to submit her blood and that of a bastard child to examination, for the purpose of establishing the paternity, was refused upon the ground that it would be highly improper, the Commonwealth being a party, to suspend the trial of the case until the mother consented. The court put its refusal on the ground that legislation would be required for such an order.

It is a serious question, however, whether the author-

ity in a divorce case does not rest upon other principles. In the case of Union Pacific Ry. Co. v. Botsford, 141 U. S. 250, 252, in which the Supreme Court of the United States held that a court of the United States could not order a plaintiff, in a personal injury case, to submit to a physical examination in advance of the trial, it, however, said:

"The authority of courts of divorce, in determining a question of impotence as affecting the validity of a marriage, to order an inspection by surgeons of the person of either party, rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction; and is derived from the civil and canon law, as administered in spiritual and ecclesiastical courts, not proceeding in any respect according to the course of the common law. *Briggs* v. *Morgan*, 2 Hagg. Con. 324; *S. C.* 3 Phillimore, 325; *Devanbagh* v. *Devanbagh*, 5 Paige, 554; *Le Barron* v. *Le Barron*, 35 Vermont, 365."

The subject was covered at length in the very interesting case of Le Barron v. Le Barron, 35 Vt. 365, which involved the petition of a wife alleging the physical impotence of her husband. The court said:

"The objection to the motion is based upon this ground: that the whole jurisdiction and power of the court over the subject of granting divorces and annulling marriages, is given by statute; that the court has no power except such as the statute confers; and that, as the statute does not give the court the power to require such an examination, therefore it does not possess it."

After outlining the opinion that the legal power to annul marriages in England was a part of the common law of that country, but having rested in the ecclesiastical courts and not in the common-law courts of England could not be exercised by the common-law courts of this country until jurisdiction was given by the legislature, the court said:

"When the legislature establish a tribunal to exer-

cise this jurisdiction, or invest it in any of the already established courts, such tribunal becomes entitled, and it is their duty, to exercise it, according to the general principles of the common law of the subject, and the practice of the English courts, so far as they are suited to our condition and the general spirit of our laws, or are modified or limited by our statute. . . . The power to grant divorces and annul marriages, has been by our legislature vested in the supreme court but no provision has been made by statute in relation to the mode of obtaining proof, or what proof shall be required. In thus conferring jurisdiction of this subject upon the court, it must be intended that all incidental powers necessary to make its exercise effectual, are also given, and that this is to be done in accordance with the principles and practice of the English courts, so far as applicable to the condition and circumstances of our people, and not contrary to any of our legislation, and the general spirit of our laws. Impotency, by our statute, is made a ground for annulling a marriage. Ordinarily, this is a matter which can not be proved by witnesses. The very nature of the fact precludes it, and if the court have no power to compel an examination, for the purpose of ascertaining the fact, it would in most cases amount to an absolute denial of justice, and that part of the statute making this a cause for nullifying a marriage, would be a dead letter.

"Upon authority and reason, we are clearly satisfied that the power exists in the court to compel such examination, although the statute does not provide for it."

In this same case it is said at page 368:

"The uniform and settled practice in the ecclesiastical courts in England, in this class of cases, is to require a medical examination, and to compel the party to submit to it, if he will not do so voluntarily. *Norton* v. *Seton*, 1 E. E. Rep. 384; *Briggs* v. *Morgan, id.* 408. In the last case Lord Stowell states the reason and foundation of the rule: 'It has been said that the means resorted to for proof on these occasions, are offensive to natural mod-

esty; but nature has provided no other means, and we must be under the necessity of saying that all relief shall be denied, or of applying the means within our power. The court must not sacrifice justice to notions of delicacy of its own.' "

In England, courts had authority to enforce the order by attachment, and, if necessary, to prevent the defendant from leaving the jurisdiction to avoid the examination: B. v. L., 1 L. R. Prob. & Div. 639.

In Devanbagh v. Devanbagh, 5 Paige 554, 28 Am. Dec. 443, the chancellor said, at page 445:

"From the very nature of the case, it appears to be impossible to ascertain the fact of incurable impotence, especially where the husband is the complaining party, except by a proper surgical examination by skillful and competent surgeons, in connection with other testimony. And if the allegations in the bill have neither been admitted nor denied by an answer on oath, in the usual manner, the defendant should be examined on oath before the master as to the truth of those allegations. This appears to be the ordinary course of proceedings in such cases at Doctor's Commons: See Poynt. Mar. & Div. 126, note. And I have no doubt as to the power of this court to compel the parties, in such a suit, to submit to a surgical examination, whenever it is necessary to ascertain facts which are essential to the proper decision of the cause."

After referring to the indelicacy of the application, the chancellor further said:

"This court, however, is not at liberty to decline jurisdiction in such a case, but must proceed to the examination and decision thereof in the manner required by law, if the injured party thinks proper to insist upon his legal rights."

In Anonymous, 89 Ala. 291, the court held that if the nature of the disability were such as to demand it, both parties might be required to submit to examination.

There is another phase of the matter which would in-

dicate that the court should be clothed with the power to make and enforce a necessary order. That is, that the complaining party was the victim of a fraud perpetrated upon him. In Gring v. Lerch, 112 Pa. 244, 249, the court said:

". . . he has a right to presume that her physical condition is such that she is capable of giving him the intercourse between the sexes which is usual in the marriage state. He has a right to presume so because the defect, if it exists at all, is a concealed one, and not open to his observation. To conceal such a thing from him until after marriage would be a fraud. . . ." and would of itself avoid the contract.

In such a case then a libellant is in a position of saying that he has been the victim of a fraud and of asking the court to remedy the wrong which his spouse, by the fraud, has perpetrated upon him. The burden of proving the fact is on him, and as has already been indicated from the quotations above made, there may be no satisfactory proof of the fact except a physical examination. It certainly would amount to a denial of justice if a libellant under such circumstances could not obtain the proof.

We are of opinion, therefore, that in a proper case the court has power in a divorce case to order a physical examination to prove the allegations of impotency, and to enforce the order when necessary.

It is settled, however, that the matter rests in the sound discretion of the court. The courts have, in cases of advanced age of the parties, refused to make such an order. In Briggs v. Morgan, 3 Phillim. Eccl. Rep. 325, where a man married a woman over 50 years of age, the English court refused the divorce on the ground of impotency.

In Shafto v. Shafto, 28 N. J. Eq. 34, the husband did not apply for a divorce for a year and a half after the New Jersey statute, allowing divorce on that ground,

went into effect. He was at the time 66 years old and she 69. The court said:

"When she was married she was of advanced age, and she is now nearly to the limit of life. Under such circumstances as this case presents, an inspection will not be ordered. *Shelford on Marr. and Div.* 211; 2 *Bishop on Marr. and Div.* §584. 'If,' says Sir William Scott, in *Briggs* v. *Morgan*, 3 *Phill*. 325, 'there is just reason, either to suspect the truth of the statement, or to think the injury inconsiderable, the court will hesitate before it descends to modes of proof which are painful. The age is entitled to great consideration. The injury is very different from that which may occur in an earlier period of life, at a time of life when the passions are subdued and the marriage is contracted only for comfortable society. The exposure, also, of the person, at an advanced stage of life, may be felt with greater abhorrence, and complied with with more reluctance, than in the case of a younger person."

In Hatch v. Hatch, 58 Misc. 54, 110 N. Y. Supp. 18, where the plaintiff's wife was 56 years of age and the husband 69 years of age, the court refused to grant the divorce on the ground of the husband's physical incapacity. In Fulmer v. Fulmer, 13 Phila. 166, where the libellant was 73 and the respondent 60, Judge Thayer, referring to Briggs v. Morgan, supra, said:

"It may be doubted whether we would decree a divorce for such a cause between persons of such ages. . . . A celebrated civilian in commenting upon the subject . . . rather considers them (old persons) as honorary members of the matrimonial state, enjoying a title without an office: Puffendorf, lib. 6, c. I, 25; Poynter, 123, n. b."

The case, however, went off on other grounds.

In the instant case, the libellant is upwards of 70 years of age and the respondent now upwards of 63 years of age. In view of the authorities to which we refer, we think that under those circumstances, although in proper cases we have the power so to do, we should not make an

order of such a delicate nature as that requested. For these reasons the petition must be refused.

Now, December 20, 1935, the petition for an order to require the respondent to submit to a physical examination is hereby dismissed at the cost of the petitioner.