**HOWLAND et al. v. BECK, and three other cases.**

No. 6567.

Circuit Court of Appeals, Ninth Circuit.

Feb. 15, 1932.

Paul Nourse, of Los Angeles, Cal., for appellants.

John S. Leahy, of St. Louis, Mo., Anne O'Keefe, of Los Angeles, Cal., and Wm. O'Herin, of St. Louis, Mo. (Leahy, Saunders & Walther, of St. Louis, Mo., of counsel), for appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

SAWTELLE, Circuit Judge.

These appeals are from judgments rendered in actions based upon alleged negligence, brought by Ella Kinsella, Florence Esther Beck, Louise Hervey, and Mack Pope, appellees, against J. P. Howland and Mrs. J. P. Howland, appellants, to recover damages for personal injuries sustained in an automobile collision; the case of Ella Kinsella including a claim for property damage to her automobile. Appellants filed cross-complaints against Ella Kinsella and Mack Pope. By stipulation all the cases were consolidated for trial, a separate verdict and judgment being rendered in each case.

The collision occurred on July 2, 1928, on a highway between Raton and Maxwell, N. M. The appellants concede that there was sufficient evidence introduced on the part of appellees to support the judgments, but contend that the court erred in the particulars hereinafter mentioned.

There are nine specifications of error. Except as to requested instruction No. 3, which forms the basis of specification of error No. 1, the appellants "frankly admit that we did not make any specific objection to any of the instructions given by the court and of which we complain here." Nor were exceptions seasonably taken to the court's refusal to give certain requested instructions.

Counsel for the appellants then goes on to explain "the reason for this dereliction, if it is a dereliction on our part":

"During the progress of the trial, counsel for the appellees approached the court during a recess and asked the trial judge whether or not he desired objections made to the opposing parties' instructions, or desired exceptions taken to the charge given to the jury. The court stated that he did not want any objections to instructions, nor was there need, nor did he desire exceptions taken to the charges given, and upon resuming the bench, the following occurred:

"The Court. Let the record show, as far as this court is concerned, it has waived the application of the rule that there should be noted any objections or exceptions to any proposed instruction so far as any party to the case is concerned, and that whatever benefit any objecting or excepting party may have under the law to a compliance with the rule, they may have the same benefit notwithstanding the ruling is not made. * * *

"It applies to every instruction. You may have the fullest benefit of any objection you may have, *as far as this court is concerned. I am not trying to bind any other court.*" (Italics our own.)

Appellees, however, assert "that neither the court nor the attorneys for appellants or appellees relied on any stipulation with

reference to the saving of exceptions to the court's charge; and no stipulation was entered into nor does any appear in the record."

Be that as it may, we are basing our holding as to this point upon a well-established doctrine that is not concerned with the understanding of counsel as to exceptions to the instructions of the court.

It will be noticed that, as we have said, refusal to give requested instruction No. 3, covered by specification No. 1, was properly excepted to by counsel for the appellants. Both requested instructions No. 1 and No. 4, however, deal with imputable negligence as to Florence Esther Beck and Louise Hervey, in connection with the alleged negligence of Mack Pope, the appellees' colored chauffeur. In the oral argument before this court, counsel for the appellants conceded that "if there is no reversible error elsewhere, 1 and 4 alone do not constitute prejudicial error." Specifications Nos. 1, 2, 3, 4, 5, 6, and 8 deal with instructions given or refused by the trial judge.

Rule 10 of this court reads in part as follows:

"The judges of the district courts in allowing bills of exceptions shall give effect to the following rules:

"1. No bill of exceptions shall be allowed on a general exception to the charge of the court to the jury in trials at the common law. The party excepting shall be required before the jury retires to state distinctly the several matters of law in such charge to which he excepts; and no other exceptions to the charge shall be allowed by the court or inserted in a bill of exceptions."

■ In United States v. United States Fidelity & Guaranty Company, 236 U. S. 512, 529, 35 S. Ct. 298, 303, 59 L. Ed. 696, the Supreme Court said: "The primary and essential function of an exception is to direct the mind of the trial judge to a single and precise point in which it is supposed that he has erred in law, so that he may reconsider it and change his ruling if convinced of error, and that injustice and mistrials due to inadvertent errors may thus be obviated. An exception, therefore, furnishes no basis for reversal upon any ground other than the one specifically called to the attention of the trial court. [Cases cited.] And the practice respecting exceptions in the Federal courts is unaffected by the conformity act, section 914, Rev. Stat., 28 USCA § 724. [Cases cited.]"

This court has repeatedly followed the rule laid down in the above case. In Sacramento Suburban Fruit Lands Co. v. Johnson et al. (C. C. A.) 36 F.(2d) 925, it was said: "There are five specifications of error based upon exceptions to the instructions given, but these exceptions are insufficient, because in no case was the ground of the exception stated."

■ In the case at bar, the omission was even greater. Not only was there failure to state the grounds for the exceptions, but no exceptions of any kind were noted, before the jury retired, as to most of the instructions that now form the bases of the specifications of error.

Among other decisions of this court to the same effect are Sacramento Suburban Fruit Lands Co. v. Weber et al., 41 F.(2d) 514; Alaska S. S. Co. v. Katzeek, 16 F.(2d) 210, 211; Killisnoo Packing Co. v. Scott, 14 F.(2d) 86, 88; Fasulo v. United States, 7 F.(2d) 961, 962, as to the effect of a stipulation; Bilboa et al. v. United States, 287 F. 125, 126.

In the Bilboa Case, supra, this court said:

"This is an appellate tribunal, constituted and organized to review the rulings of subordinate tribunals, and ordinarily it will not consider an assignment of error, unless based on a ruling of the trial court and an exception duly noted. * * *

"This rule is not changed or modified by the Act of February 26, 1919, amending section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246 [28 USCA § 391]), which declares that appellate courts shall give judgment after examination of the entire record, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties. The purpose of this amendment is to prevent reversals based on technical errors, which, though properly preserved, do not affect substantial rights; but it does not require the court to decide on the whole record whether exception was taken or not, or overlook defects due to negligence or inattention."

In Landsberg v. San Francisco & P. S. S. Co. (C. C. A.) 288 F. 560, 561, in which no exception was taken or reserved to the charge of the court, the late Judge Rudkin cited the Bilboa Case, supra, with approval.

In the Fasulo Case, supra, Judge Hunt said [page 962 of 7 F.(2d)]:

"Before argument, counsel for the defendant asked if it might be stipulated that

the defendant have an exception to each and every instruction presented and refused or modified, or to be given, 'just as fully as when the instructions have been completed and read to the jury we shall have taken such exception and called them to your Honor's attention.' The judge replied that he had no objection, 'but, if any instruction is unsatisfactory, the court's attention should be called to it so that any error may be corrected, and any such stipulation would defeat that purpose,' and added that he thought the instructions were fair and practically embodied the substance of defendant's requests. Thereupon counsel for defendant said he understood that the assistant district attorney, who was prosecuting the case, was willing that the stipulation be made; whereupon the court said, 'Very well, that may be done for each and all of the defendants,' and thereupon proceeded to instruct the jury. When the court concluded its charge, the judge inquired if there were any subject upon which counsel would like to have the jury instructed. No reply was made, and the jury was directed to retire.

"It is well established that, in order to preserve an exception to an instruction given, counsel should call the court's attention to the specific matter while the jury is at the bar. The court therefore was right when it said the stipulation made would defeat the correcting of possible errors in the instructions about to be given, but was in error in varying its ruling by apparently giving recognition to the stipulation. However when, after the charge was delivered, the judge asked counsel if they desired instructions upon any pertinent matter, counsel remained silent, they waived objections and exceptions to the instructions given. Chief Justice Taft, for the Court of Appeals in the recent case of Brevard Tannin Co. v. Mosser Co. (C. C. A.) 288 F. 725, cited many decisions, including several by this court. * * * "

In the Brevard Case, supra, page 730 of 288 F., Mr. Chief Justice Taft used the following language: "That the action of the judge in voluntarily giving to counsel permission to take exceptions to the charge after the jury retired was improper practice is established by a long line of federal authorities. [Cases cited.] Nor does the fact that state practice, which the judge in the case before us seems to have followed, may justify reserving exceptions after the retirement of the jury, change the invariable rule in a federal court, either in a civil or a criminal case. The proper manner of reserving exceptions is part of the procedure in error in federal courts of review, and is not controlled by the conformity provision of the Revised Statutes. [Cases cited.] It has further been held that an exception taken after the jury retired cannot be considered on a writ of error under the federal practice, even if counsel are lulled into not taking exceptions while the jury is at the bar, either by stipulation, by the court's granting permission to them to do so, or by an invariable practice in the trial court, well known and acted upon by counsel. [Cases cited.]"

In view of the fact that, at the oral argument before this court, counsel for the appellants admitted that he had been "lulled to sleep" by the statement of the court below, already quoted, the language of Mr. Chief Justice Taft is particularly pertinent in the instant case.

Accordingly, we hold that specifications Nos. 2, 3, 4, 5, 6, and 8 deal with instructions given or refused which were not made the subjects of exceptions at the proper time, and therefore cannot be considered by this court.

Specification No. 7 was abandoned during the oral argument before this court.

We therefore come, finally, to specification No. 9, which asserts that "the court erred in denying the appellants' motion for the appointment by the court of a disinterested physician to examine the appellees Florence Esther Beck, Ella Kinsella, and Louise Hervey for the purpose of testifying at the trial of this cause as to the physical condition of the said appellees as the result of the accident in question."

Section 1871 of the Code of Civil Procedure of California provides as follows:

"Whenever it shall be made to appear to any court or judge thereof, either before or during the trial of any action or proceeding, civil or criminal, pending before such court, that expert evidence is, or will be required by the court or any party to such action or proceeding, such court or judge may, on motion of any party, or on motion of such court or judge, appoint one or more experts to investigate and testify at the trial of such action or proceeding relative to the matter or matters as to which such expert evidence is, or will be required, and such court or judge may fix the compensation of such expert or experts for such services, if any, as such expert or experts may have rendered, in addition to his or their services as a witness or witnesses. * * *

"Any expert so appointed by the court may be called and examined as a witness by any party to such action or proceeding or by the court itself; but, when called, shall be subject to examination and objection as to his competency and qualifications as an expert witness and as to his bias."

It will be noticed that there is nothing in the foregoing section that specifically authorizes a court to compel a plaintiff in an action for personal injuries, to submit to a physical examination by a physician named by the court.

In Union Pacific Railway Company v. Botsford, 141 U. S. 250, 257, 11 S. Ct. 1000, 1003, 35 L. Ed. 734, the Supreme Court said: "The order moved for, subjecting the plaintiff's person to examination by a surgeon, without her consent and in advance of the trial, was not according to the common law, to common usage, or to the statutes of the United States. The circuit court, to adopt the words of Mr. Justice Miller, 'has no power to subject a party to such an examination as this.' "

Because there was a state statute specifically empowering a court to order such an examination, the Supreme Court, in Camden & Suburban Railway Company v. Stetson, 177 U. S. 172, 173, 175, 177, 20 S. Ct. 617, 618, 44 L. Ed. 721, distinguished the case then before it on certificate, from the Botsford Case:

"On the 12th of May, 1896, the legislature of New Jersey passed and the governor approved an act [c. 202, p. 344] which reads as follows:

" '1. On or before the trial of any action brought to recover damages for injury to the person, the court before whom such action is pending, may, from time to time on application of any party therein, order and direct an examination of the person injured, as to the injury complained of, by a competent physician or physicians, surgeon or surgeons, in order to qualify the person or persons making such examination, to testify in the said cause as to the nature, extent and probable duration of the injury complained of; and the court may in such order direct and determine the time and place of such examination; provided, this act shall not be construed to prevent any other person or physician from being called and examined as a witness as heretofore.' * * *

"Counsel for plaintiff refers in his argument to the opinion in the Botsford Case, where it is stated (at page 256 of 141 U. S., 11 S. Ct. 1002, 35 L. Ed. 739), that the question is one which is not governed by the law or practice of the state in which the trial is had, but that it depends upon the power of the national courts under the Constitution and laws of the United States, and he argues therefrom that the state statute is immaterial, and can furnish no foundation for the exercise of the power by the Federal court. We do not dispute that if there were no law of the United States which, in connection with the state law, could be referred to as in effect providing for the exercise of the power, the court could not grant the order under the decision in the case of Botsford. But we say there is a law of the United States which does apply the laws of the state where the United States court sits; and where the state has a law which provides for the making of an order for the examination of the person of a plaintiff in a case like this, the law of the United States applies that law to cases of such a nature on trial in Federal courts sitting in that state. In the Botsford Case there was no state law, and consequently no foundation for the application of the law of the United States. * * *

"But by reason of the statute of New Jersey, in which state this action was brought, there being no law of Congress in conflict therewith, we hold that the courts of the United States therein sitting have the power under the statute and by virtue of § 721 of the Revised Statutes of the United States [28 USCA § 725], to order the examination of the person of the plaintiff, and we therefore answer the third question of the court below in the affirmative. * * * * "

It will be noted the stress laid by the Supreme Court upon the importance of there being a state statute specifically authorizing the court to order such an examination of "the person of the plaintiff." It is clear that, had there been no state statute in the Camden Case, the decision there would have been identical with that of the Botsford Case.

In Bailey v. Texas Co. et al. (D. C.) 34 F.(2d) 829, affirmed (C. C. A. 2) in 47 F. (2d) 153, the District Court for the Eastern District of New York so interpreted the Botsford Case, and, because there was a specific state statute in New York authorizing such a physical examination of the plaintiff [quoted at page 830 of (C. C. A.) 34 F. (2d) in the opinion], granted the motion of the defendant.

Besides New York and New Jersey, other states having similar statutes that authorize such physical examinations include, in

this circuit, Arizona (1928 Revised Code, § 4468) and Washington (Remington's Compiled Statutes 1922, § 1230—1).

Courts in many other states, however, have sustained this right as being an "inherent" power of judicial tribunals, presumably under the common law. But, as we have seen, the Supreme Court of the United States has clearly declared, in the Botsford Case, that it does not share this view.

In Rison v. Postal Telegraph-Cable Co. (D. C. Cal.) 28 F.(2d) 788, the court held that "there is no statute in California expressly authorizing such an order."

Citing the Rison Case, supra, Judge James, United States District Judge, who, though not the trial judge, ruled on the motion for a physical examination in the instant case, said: "It would seem quite clear from the United States Supreme Court's rulings that the order cannot be allowed for the personal examination of a party, unless there is some statute of the state in which the federal court is held, directly authorizing the same. Counsel for defendants refer to Section 1871, which provides generally for the appointment of experts by the court, to investigate and testify as to any matter involved in a pending action. I am not of the opinion that this statute is broad enough to permit an order to be made compelling a party to submit to a physical examination at the behest of his adversary. As I stated at the argument of the motion, the party desiring to have such an examination made, ought to be allowed to show fully before the jury that such an examination has been denied him. And that, in the situation of the law, seems to be all that will be permitted."

In the absence of a statute of the state of California expressly requiring plaintiff in cases of this character to submit himself to a physical examination, we adhere to the doctrine of the Supreme Court in the Botsford and Camden Cases, supra, and hold that the District Court was without power to order the plaintiffs in this case to submit themselves to such an examination.

Section 1871 of the Code of Civil Procedure of California in our judgment does not change the common-law rule. It is conceded that section 1871 does not, "in so many words, say that the court shall have the power to cause a party to submit to an examination by an expert appointed by the court," but it is contended that "whenever a power is given by statute, everything necessary to make it effectual or requisite to attain the

end is implied." In our opinion, section 1871 was not designed to apply to cases of this character.

It must be remembered that the Supreme Court of California in 1907, in the case of Johnston v. Southern Pacific Company, 150 Cal. 535, 89 P. 348, 11 Ann. Cas. 841, refused to follow the holding of the Supreme Court of the United States in the Botsford Case and held that in the absence of a statute the California trial courts have the inherent power to order such an examination. Hence, so far as the courts of California are concerned, no legislative enactment was necessary.

In states where the common-law rule has been changed or abrogated, the statutes are very definite and certain and usually provide in substance that where the action is brought to recover damages for injuries to the person, the court may, on application of either party and at his expense, order an examination of the person injured as to the injury complained of by one or more disinterested physicians, to qualify the person making such examination to testify in the action as to such injury. To pass such a statute is clearly within the power of the Legislature. The Supreme Court in the Camden Case, supra, held that the Legislature of New Jersey had exercised such power. The Legislature of California, perhaps because of the holding in the Johnston Case, has not seen fit to do so. Therefore, under the Supreme Court's ruling the United States District Courts in California have no power to order a physical examination of a plaintiff in a personal injury suit.

Judgment affirmed.