UNION PACIFIC RAILWAY COMPANY *v.*
BOTSFORD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF INDIANA.

No. 1375.   Submitted January 6, 1891. — Decided May 25, 1891.

A court of the United States cannot order a plaintiff, in an action for an injury to the person, to submit to a surgical examination in advance of the trial.

THE original action was by Clara L. Botsford against the Union Pacific Railway Company, for negligence in the construction and care of an upper berth in a sleeping car in which she was a passenger, by reason of which the berth fell upon her head, bruising and wounding her, rupturing the membranes of the brain and spinal cord, and causing a concussion of the same, resulting in great suffering and pain to her in body and mind, and in permanent and increasing injuries. Answer, a general denial.

Three days before the trial (as appeared by the defendant's bill of exceptions) "the defendant moved the court for an order against the plaintiff, requiring her to submit to a surgical examination, in the presence of her own surgeon and attorneys, if she desired their presence; it being proposed by the defendant that such examination should be made in manner not to expose the person of the plaintiff in any indelicate manner; the defendant at the time informing the court that

such examination was necessary to enable a correct diagnosis of the case, and that without such examination the defendant would be without any witnesses as to her condition. The court overruled said motion, and refused to make said order, upon the sole ground that this court had no legal right or power to make and enforce such order." .

To this ruling and action of the court the defendant duly excepted, and after a trial, at which the plaintiff and other witnesses testified in her behalf, and which resulted in a verdict and judgment for her in the sum of $10,000, sued out this writ of error.

*Mr. John F. Dillon* and *Mr. Harry Hubbard* for plaintiff in error.

*Mr. Addison C. Harris* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The single question presented by this record is whether, in a civil action for an injury to the person, the court, on application of the defendant, and in advance of the trial, may order the plaintiff, without his or her consent, to submit to a surgical examination as to the extent of the injury sued for. We concur with the Circuit Court in holding that it had no legal right or power to make and enforce such an order.

No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley; "The right to one's person may be said to be a right of complete immunity: to be let alone." Cooley on Torts, 29.

For instance, not only wearing apparel, but a watch or a jewel, worn on the person, is, for the time being, privileged from being taken under distress for rent, or attachment on mesne process, or execution for debt, or writ of replevin. 3 Bl. Com. 8; *Sunbolf* v. *Alford*, 3 M. & W. 248, 253*, 254*;

*Mack* v. *Parks*, 8 Gray, 517; *Maxham* v. *Day*, 16 Gray, 213.

The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country.

In former times, the English courts of common law might, if they saw fit, try by inspection or examination, without the aid of a jury, the question of the infancy, or of the identity of a party; or, on an appeal of maihem, the issue of maihem or no maihem; and, in an action of trespass for maihem, or for an atrocious battery, might, after a verdict for the plaintiff, and on his motion, and upon their own inspection of the wound, *super visum vulneris*, increase the damages at their discretion. In each of those exceptional cases, as Blackstone tells us, "it is not thought necessary to summon a jury to decide it," because "the fact, from its nature, must be evident to the court, either from ocular demonstration or other irrefragable proof," and, therefore, "the law departs from its usual resort, the verdict of twelve men, and relies on the judgment of the court alone." The inspection was not had for the purpose of submitting the result to the jury, but the question was thought too easy of decision to need submission to a jury at all. 3 Bl. Com. 331–333.

The authority of courts of divorce, in determining a question of impotence as affecting the validity of a marriage, to order an inspection by surgeons of the person of either party, rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to

exercise its jurisdiction; and is derived from the civil and canon law, as administered in spiritual· and ecclesiastical courts, not proceeding in any respect according to the course of the common law. *Briggs* v. *Morgan*, 2 Hagg. Con. 324; *S. C.* 3 Phillimore, 325; *Devanbagh* v. *Devanbagh,* 5 Paige, 554; *Le Barron* v. *Le Barron*, 35 Vermont, 365.

The writ *de ventre inspiciendo,* to ascertain whether a woman convicted of a capital crime was quick with child, was allowed by the common law, in order to guard against the taking of the life of an unborn child for the crime of the mother.

The only purpose, we believe, for which the like·writ was allowed by the common law, in a matter of civil right, was to protect the rightful· succession to the property of a deceased person against fraudulent claims of bastards, when a widow. was suspected to feign herself with child in order to produce a supposititious heir to the estate, in which case the heir or devisee might have this writ to examine whether she was with child or not, and, if she was, to keep her under proper restraint till delivered. 1 Bl. Com. 456; Bac. Ab. Bastard, A. In cases of that class, the writ has been issued in England in quite recent times. *In re Blakemore,* 14 Law Journal (N. S.) ·Ch. 336. But the learning and research of the counsel for the plaintiff in error have failed to produce an instance of its ever having been considered, in any part of the United States, as suited to the habits and condition of the·people.

So far as the books within our reach show, no order to inspect the body of a party in a personal action appears to have been made, or even moved for, in any of the English courts of common law, at any period of their history.

The most analogous cases in England, that have come under our notice, are two in the Common Bench, in each of which an order for the inspection of a building was asked for in an action for work and labor done thereon, and was refused for want of power in the court to make or enforce it.

In one of them, decided in 1838, counsel moved for an order that the plaintiff and his witnesses have a view of the building and an inspection of the work done thereon; and stated that

the object of the motion was to prevent great expense, to obviate the necessity of calling a host of surveyors, and to avoid being considered trespassers. Thereupon one of the judges said : " Then you are asking the court to make an order for you to commit a trespass; " and Chief Justice Tindal said: "Suppose the defendants keep the door shut; you will come to us to grant an attachment; could we grant it in such a case? You had better see if you can find any authority to support you, and mention it to the court again." On a subsequent day, the counsel stated that he had not been able to find any case in point; and therefore took nothing by his motion. *Newham* v. *Tate*, 1 Arnold, 244; *S. C.* 6 Scott, 574.

In the other case, in 1840, the court discharged a similar order, saying : " The order, if valid, might, upon disobedience to it, be enforced by attachment. Then, it is evidently one which a judge has no power to make. If the party should refuse so reasonable a thing as an inspection, it may be a matter of argument before the jury, but the court has no power to enforce it." *Turquand* v. *Strand Union*, 8 Dowling, 201 ; *S. C.* 4 Jurist, 74.

In the English Common Law Procedure Act of 1854, enlarging the powers which the courts had before, and authorizing them, on the application of either party, to make an order " for the inspection by the jury, or by himself, or by his witnesses, of any real or personal property, the inspection of which may be material to the proper determination of the question in dispute," the omission to mention inspection of the person is significant evidence that no such inspection, without consent, was allowed by the law of England. Taylor on Ev. (6th ed.) §§ 502–504.

Even orders for the inspection of documents could not be made by a court of common law, until expressly authorized by statute, except when the document was counted or pleaded on, or might be considered as held in trust for the moving party. Taylor on Ev. §§ 1588–1595 ; 1 Greenleaf on Ev. § 559.

In the case at bar, it was argued that the plaintiff in an action for personal injury may be permitted by the court, as

in *Mulhado* v. *Brooklyn Railroad*, 30 N. Y. 370, to exhibit his wounds to the jury in order to show their nature or extent, and to enable a surgeon to testify on that subject; and therefore may be required by the court to do the same thing, for the same purpose, upon the motion of the defendant. But the answer to this is, that any one may expose his body, if he chooses, with a due regard to decency, and with the permission of the court; but that he cannot be compelled to do so, in a civil action, without his consent. If he unreasonably refuses to show his injuries, when asked to do so, that fact may be considered by the jury, as bearing on his good faith, as in any other case of a party declining to produce the best evidence in his power. *Clifton* v. *United States*, 4 How. 242; *Bryant* v. *Stilwell*, 24 Penn. St. 314; *Turquand* v. *Strand Union*, above cited.

In this country, the earliest instance of an order for the inspection of the body of the plaintiff in an action for a personal injury appears to have been in 1868 by a judge of the Superior Court of the city of New York in *Walsh* v. *Sayre*, 52 How. Pract. 334, since overruled by decisions in general term in the same State. *Roberts* v. *Ogdensburgh & Lake Champlain Railroad*, 29 Hun, 154; *Neuman* v. *Third Avenue Railroad*, 18 Jones & Spencer, 412; *McSwyny* v. *Broadway Railroad*, 27 N. Y. State Reporter, 363. And the power to make such an order was peremptorily denied in 1873 by the Supreme Court of Missouri, and in 1882 by the Supreme Court of Illinois. *Loyd* v. *Hannibal & St. Joseph Railroad*, 53 Missouri, 509; *Parker* v. *Enslow*, 102 Illinois, 272.

Within the last fifteen years, indeed, as appears by the cases cited in the brief of the plaintiff in error,[1] a practice to grant

---

[1] *Schroeder* v. *Chicago &c. Railway*, 47 Iowa, 375; *Miami &c. Turnpike Co.* v. *Baily*, 37 Ohio St. 104; *Atchison, Topeka & Santa Fé Railroad* v. *Thul*, 29 Kansas, 466; *White* v. *Milwaukee Railway*, 61 Wisconsin, 536; *Hatfield* v. *St. Paul & Duluth Railroad*, 33 Minnesota, 130; *Stuart* v. *Havens*, 17 Nebraska, 211; *Owens* v. *Kansas City &c. Railroad*, 95 Missouri, 169; *Sibley* v. *Smith*, 46 Arkansas, 275; *Missouri Pacific Railroad* v. *Johnson*, 72 Texas, 95; *Richmond & Danville Railroad* v. *Childress*, 82 Georgia, 719; *Alabama &c. Railroad* v. *Hill*, 90 Alabama, 71.

such orders has prevailed in the courts of several of the Western and Southern States, following the lead of the Supreme Court of Iowa in a case decided in 1877. The consideration due to the decisions of those courts has induced us fully to examine, as we have done above, the precedents and analogies on which they rely. Upon mature advisement, we retain our original opinion that such an order has no warrant of law.

In the State of Indiana, the question appears not to be settled. The opinions of its highest court are conflicting and indecisive. *Kern* v. *Bridwell*, 119 Indiana, 226, 229 ; *Hess* v. *Lowrey*, 122 Indiana, 225, 233 ; *Terre Haute & Indianapolis Railroad* v. *Brunker*, 26 Northeastern Reporter, 178. And the only statute, which could be supposed to bear upon the question, simply authorizes the court to order a view of real or personal property which is the subject of litigation, or of the place in which any material fact occurred. Indiana Rev. Stat. 1881, c. 2, § 538.

But this is not a question which is governed by the law or practice of the State in which the trial is had. It depends upon the power of the national courts under the Constitution and laws of the United States.

The Constitution, in the Seventh Amendment, declares that in all suits at common law, where the value in controversy shall exceed twenty dollars, trial by jury shall be preserved. Congress has enacted that "the mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in open court, except as hereinafter provided," and has then made special provisions for taking depositions. Rev. Stat. §§ 861, 863 *& seq*. The only power of discovery or inspection, conferred by Congress, is to "require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery," and to nonsuit or default a party failing to comply with such an order. Rev. Stat. § 724. And the provision of § 914, by which the practice, pleadings and forms and modes of proceeding in the courts of each State are to be followed in

actions at law in the courts of the United States held within the same State, neither restricts nor enlarges the power of these courts to order the examination of parties out of court. *Nudd* v. *Burrows,* 91 U. S. 426, 442; *Indianapolis & St. Louis Railroad* v. *Horst,* 93 U. S. 291, 300; *Ex parte Fisk,* 113 U. S. 713; *Chateaugay Iron Co., petitioner,* 128 U. S. 544, 554.

In *Ex parte Fisk,* just cited, the question was whether a statute of New York, permitting a party to an action at law to be examined by his adversary as a witness in advance of the trial, was applicable after an action begun in a court of the State had been removed into the Circuit Court of the United States. It was argued that the object of § 861 of the Revised Statutes of the United States was to provide a mode of proof on the trial; and not to affect this proceeding in the nature of discovery, conducted in accordance with the practice prevailing in New York. 113 U. S. 717. But this court, speaking by Mr. Justice Miller, held that this was a matter of evidence, and governed by that section, saying : "Its purpose is clear to provide a mode of proof in trials at law, to the exclusion of all other modes of proof." "It is not according to common usage to call a party in advance of the trial at law, and subject him to all the skill of opposing counsel, to extract something which he may use or not as it suits his purpose." "Every action at law in a court of the United States must be governed by the rule or by the exceptions which the statute provides. There is no place for exceptions made by state statutes. The court is not at liberty to adopt them, or to require a party to conform to them. It has no power to subject a party to such an examination as this." 113 U. S. 724.

So we say here. The order moved for, subjecting the plaintiff's person to examination by a surgeon, without her consent and in advance of the trial, was not according to the common law, to common usage, or to the statutes of the United States. The Circuit Court, to adopt the words of Mr. Justice Miller, "has no power to subject a party to such an examination as this."

*Judgment affirmed.*

Mr. Justice Brewer, with whom concurred Mr. Justice Brown, dissenting.

Mr. Justice Brown and myself dissent from the foregoing opinion. The silence of common law authorities upon the question in cases of this kind proves little or nothing. The number of actions to recover damages, in early days, was, compared with later times, limited; and very few of those difficult questions as to the nature and extent of the injuries, which now form an important part of such litigations, were then presented to the courts. If an examination was asked, doubtless it was conceded without objection, as one of those matters the right to which was beyond dispute. Certainly the power of the courts and of the common law courts to compel a personal examination was, in many cases, often exercised, and unchallenged. Indeed, wherever the interests of justice seem to require such an examination, it was ordered. The instances of this are familiar; and in those instances the proceedings were, as a rule, adverse to the party whose examination was ordered. It would be strange that, if the power to order such an examination was conceded in proceedings adverse to the party ordered to submit thereto, it should be denied where the suit is by the party whose examination is sought. In this country the decisions of the highest courts of the various States are conflicting. This is the first time it has been presented to this court, and it is, therefore, an open question. There is here no inquiry as to the extent to which such an examination may be required, or the conditions under which it may be held, or the proper provisions against oppression or rudeness, nor any inquiry as to what the court may do for the purpose of enforcing its order. As the question is presented, it is only whether the court can make such an order.

The end of litigation is justice. Knowledge of the truth is essential thereto. It is conceded, and it is a matter of frequent occurrence, that in the trial of suits of this nature the plaintiff may make in the court-room, in the presence of the jury, any not indecent exposure of his person to show the

extent of his injuries; and it is conceded, and also a matter of frequent occurrence, that in private he may call his personal friends and his own physicians into a room, and there permit them a full examination of his person, in order that they may testify as to what they see and find. In other words, he may thus disclose the actual facts to the jury if his interest require; but by this decision, if his interests are against such a disclosure, it cannot be compelled. It seems strange that a plaintiff may, in the presence of a jury, be permitted to roll up his sleeve and disclose on his arm a wound of which he testifies; but when he testifies as to the existence of such a wound, the court, though persuaded that he is perjuring himself, cannot require him to roll up his sleeve, and thus make manifest the truth, nor require him in the like interest of truth, to step into an adjoining room, and lay bare his arm to the inspection of surgeons. It is said that there is a sanctity of the person which may not be outraged. We believe that truth and justice are more sacred than any personal consideration; and if in other cases in the interests of justice, or from considerations of mercy, the courts may, as they often do, require such personal examination, why should they not exercise the same power in cases like this, to prevent wrong and injustice?

It is not necessary, nor is it claimed, that the court has power to fine and imprison for disobedience of such an order. Disobedience to it is not a matter of contempt. It is an order like those requiring security for costs. The court never fines or imprisons for disobedience thereof. It simply dismisses the case, or stays the trial until the security is given. So it seems to us that justice requires, and that the court has the power to order, that a party who voluntarily comes into court alleging personal injuries, and demanding damages therefor, should permit disinterested witnesses to see the nature and extent of those injuries in order that the jury may be informed thereof by other than the plaintiff and his friends; and that compliance with such an order may be enforced by staying the trial, or dismissing the case.

For these reasons we dissent.