(34 Misc. Rep. 109.)

## ANONYMOUS.

(Supreme Court, Special Term, New York County. February, 1901.)

1. ACTION TO ANNUL MARRIAGE—PHYSICAL EXAMINATION OF HUSBAND.

In a suit by a wife to annul her marriage for fraud in that defendant represented himself to be in good health, when in fact he was sick with a venereal disease, though the court may compel him to submit to a physical examination, when necessary to establish plaintiff's cause of action, such examination will not be ordered before trial, nor then, unless necessary to prevent a denial of justice.

2. SAME.

Code Civ. Proc. § 872, relating to discovery before trial, applies only to the statutory examination of a plaintiff before trial, and does not affect the right of a wife, in a suit to annul marriage for fraud, to compel husband to submit to physical examination.

Motion to compel defendant to submit to a physical examination before trial. Denied.

McNaught & Redding (William N. Cohen, of counsel), for plaintiff. Roger Foster, for defendant.

LEVENTRITT, J. This is a motion to compel the defendant to submit to a physical examination before trial. The action is brought for the annulment of marriage on the ground of fraud. The alleged fraud consisted in representations of good health, relied on by the plaintiff, when the defendant was, in fact, at the time of his marriage, afflicted with the disease known as "syphilis." The defendant has appeared, and interposed an answer setting up what is, in effect, a general denial. Vigorous opposition is made to the motion, and, though both the allegations of the answer and the affidavits in opposition are artful and evasive, the fact remains that the defendant denies that he was at the time of his marriage to the plaintiff or is now afflicted with specific disease. It is urged on his be-

half that the court is without power in an action of this nature to compel an inspection of his person. This is going too far. I am satisfied that the power exists, within narrowly circumscribed limits; that it is inherent in the court in this class of actions; but that the remedy is so extraordinary, and necessarily so violative of the privacy of person, that its application should be restricted to extreme cases, and then not exercised before it is apparent that no other means of proof are available. An examination may be proper in this case, it is certainly permissible, but the time for determining its propriety has not yet arrived.

The defendant's preliminary objection that the motion papers are defective, in that there is failure to comply with the requirements of section 872 of the Code of Civil Procedure, is not well taken, inasmuch as the provisions of that section apply only to the statutory examinations of a plaintiff before trial. This application does not rest upon the statute, consequently the requirements of a motion made thereunder are not part of it.

Prior to the case of McQuigan v. Railroad Co., 129 N. Y. 50, 29 N. E. 235, 14 L. R. A. 466, divergent views had been expressed in the supreme court as to its power to compel the inspection by physicians and surgeons of a party's person, either in advance of or at the trial, even in the case of an action for personal injuries. Walsh v. Sayre, 52 How. Prac. 334; Roberts v. Railroad Co., 29 Hun, 154. The McQuigan Case, but recently followed (Cole v. Coal Co., 159 N. Y. 59, 69, 53 N. E. 670), disapproved the Walsh Case, and followed the Roberts Case, holding that there was no power inherent in the supreme court to direct such an examination; that the power was no part of the recognized jurisdiction of courts of law or equity; and that then existing legislation had not conferred the right on either party litigant. The court referred to, and in part based its decision on, Railway Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, similarly resting on the want of power, and in which the court said that the inviolability of the person was as much invaded by a compulsory stripping as by a blow. To supply the power in a special class of cases, chapter 428 of the Laws of 1894 was passed, amending section 873 of the Code of Civil Procedure by permitting the examination of the plaintiff, at the instance of the defendant, in an action for personal injuries. The power in other directions remained as theretofore.

The right exercised from the earliest day by courts having jurisdiction in divorce matters, in ordering inspection, is not statutory. The ecclesiastical and spiritual courts of England, in which were vested the exclusive jurisdiction of annulment and dissolution of marriages, developed a body of law that became a part of the general law of the realm, and thus, in its large sense, of the common law of England, adopted by our states, and controlling, except as modified by New-World conditions or express repugnance to constitutional and legislative enactment. Lebarron v. Lebarron, 35 Vt. 365. In our state the legislature conferred on the courts of chancery jurisdiction over matters of marriage and divorce. Laws 1787, c. 69; Burtis v. Burtis, 1 Hopk. Ch. 557. This was necessary, as

the old ecclesiastical courts were not perpetuated. But no authority was granted, in terms, concerning the right of inspection. In an early action in this state, however, brought to annul a marriage on the ground of impotence, the directing power of the court was sustained by Chancellor Walworth, who said:

"When the legislature conferred this branch of its jurisdiction upon the court of chancery, it was not intended to adopt a different principle from that which had theretofore existed in England. * * * And the court is, by necessary implication, armed with all the usual powers which, in that country from which our laws are principally derived, are deemed requisite to ascertain the fact of incapacity, and without which it would be impossible to exercise such jurisdiction." Devanbagh v. Devanbagh, 5 Paige, 554.

The existence of the inherent power of the court here defined has been reaffirmed in this state (Newell v. Newell, 9 Paige, 25; Cahn v. Cahn, 21 Misc. Rep. 506, 48 N. Y. Supp. 173), and has been conceded in cases where inspection has been denied as not within the exception. Thus, in Roberts v. Railroad Co., supra, the power exercised in Devanbagh v. Devanbagh was referred to as "a peculiarity arising in that class of cases from the necessity of the case" (at page 156, 29 Hun). In McQuigan v. Railroad Co., supra, the leading case, denying the authority to examine in the absence of a statute, it is said:

"The doctrine of the cases in chancery, * * * that in an action to procure a decree of nullity of marriage on the ground of impotence or sexual incapacity, the chancellor may compel the defendant to submit to a surgical examination, is a graft from the civil and common law, and, as has been said, 'rests upon the interest which the public, as well as the parties, have in the question of upholding or dissolving the marriage state, and upon the necessity of such evidence to enable the court to exercise its jurisdiction.' Gray, J., in Railway Co. v. Botsford, supra."

And but very recently it has been declared that:

"The right is sustained in such cases by virtue of the obligation imposed upon the court to require proof of the fact at the time of the marriage, and the exercise of the power is based upon the ground of the interest of the public in such contracts." People v. Roosa, 43 App. Div. 611, 612, 60 N. Y. Supp. 244.

I know of no precedent in this state in any wise questioning or disapproving the doctrine that, in a proper case, there is inherently in the court the power to require submission to medical or surgical examination.

It is to be observed that in all the cases cited, in which an examination was ordered, relief was sought on the ground of impotence. I have been referred to no authority in which an examination has been directed to establish the existence of specific disease. But I can discover no difference in principle where the essential elements authorizing inspection in the one case exist in the other. A marriage should be annulled, in my opinion, as much on the ground here assigned for relief as in the case where consummation is rendered impossible by reason of the physical defect or malformation of one of the contracting parties. The primary interest of society, and of its instrument, the state, is the maintenance intact of the marriage relation; and on its permanent and binding quality, and on the preservation of the family relation growing out of it, the entire moral

550 NEW YORK SUPPLEMENT

superstructure of the social order depends. Properly, therefore, have our laws added their sanction to the solemnity of the marital obligation, and made divorce difficult. But the state, which may not improperly be considered a third party, as it were, to every marriage contract, has in a proper case as much interest in dissolving the marriage tie as in upholding it. Where a person to his knowledge afflicted with a most grievous venereal disease, contagious in a very high degree, and which, even under the most favorable circumstances, requires years before it yields to treatment, and may even then for a long time still lurk in the system, a source of hidden danger, marries an innocent girl, under representations that his health is sound, threatens her with infection, and their offspring with hereditary disease, a case is presented for state interference and judicial annulment. It is quite true that a much higher degree of fraud is required to warrant an annulment of a marriage than in the case of an ordinary civil contract inter partes; and it is also true that fraudulent representations as to good health, as that term is generally understood, do not vitiate the compact. 1 Bish. Mar. & Div. §§ 183, 184; Fisk v. Fisk, 6 App. Div. 432, 30 N. Y. Supp. 537. In this case, however, if the allegations are true, an instance of extreme fraud is presented, and the misrepresentation as to health is not such a one as is contemplated by the authorities. Speaking broadly, it may be said that it is a question of the health and morality of the community.

Establishing her complaint, then, I believe the plaintiff would be entitled to relief. The question now is whether she should have the examination at this stage. I think not. An examination of this nature can and should never be granted as a matter of course. The absolute necessity therefor must unmistakably appear. The remedy, at best, is an extraordinary one, far from being favored by our principles or our practice. It involves, in any event, an indelicate invasion of the inviolability of person, which, while rendered necessary in extreme cases to prevent a denial of justice, should be resorted to only where all other means of proof fail. I think a proper regard for the rights of the individual requires an adherence to the rule that the necessity for the examination should appear on the trial, and not upon facts shown on a preliminary hearing. 2 Nels. Div. & Sep. § 700. I am not prepared to say that the plaintiff cannot prove her case except by the results of an inspection. Mr. Nelson, in the work just cited, refers even to a case of impotency where a physical examination was not deemed necessary. Harrison v. Harrison, 4 Moore, P. C. 96. Whether the plaintiff can or cannot establish her case by other available testimony is not germane to the decision of this motion. The point is that it does not conclusively appear that she cannot. It is unnecessary to dwell on the unsavory details in the affidavits, to weigh the conflicting statements, or to appraise at their exact worth the evasive assertions in answer to the plaintiff's averments. Were it requisite, it would be impracticable, as another material question—the extent to which certain alleged admissions of the defendant are to be considered privileged— is not presented with sufficient clearness on this application to pre-

clude a different ruling on the trial from the one at which I might now arrive. I am of the opinion that this case should proceed to speedy trial, and that if it shall then appear that an examination is necessary, so that there shall not be a denial of justice, a new application should be made to the judge there presiding. The plaintiff should first establish by adequate proof all necessary preliminary questions, and show the necessity of the evidence now sought to be obtained. It will then be the duty of the court to rise above considerations of delicacy, sacrificing them to the larger considerations of justice.

Ordered accordingly. No costs.