Robert L. SCHLAGENHAUF, Petitioner,

v.

Cale J. HOLDER, United States District Judge for the Southern District of Indiana, Respondent.

No. 14103.

United States Court of Appeals Seventh Circuit.

July 23, 1963.

Richard W. Yarling, Indianapolis, Ind., for petitioner.

Erle A. Kightlinger, Indianapolis, Ind., for respondent.

Before KILEY and SWYGERT, Circuit Judges, and GRANT, District Judge.

SWYGERT, Circuit Judge.

Robert L. Schlagenhauf petitions for a writ of mandamus (28 U.S.C. § 1651(a), the All Writs Act) directed to the Honorable Cale J. Holder, district judge. The petition raises an important question respecting the scope of Rule 35, Fed.R. Civ.P.,[1] viz., whether a federal district court has the power to order a mental or physical examination of a person who is a defendant in a tort action. We know of no prior decision directly in point.[2]

Because the question is fundamental, going to the court's power to require a medical examination of a defendant in a civil action, we directed the district judge to show cause why the writ should not issue. After a response to our order had been filed on behalf of the district

---

1. Rule 35 of the Federal Rules of Civil Procedure provides: "Rule 35. Physical and Mental Examination of Persons. (a) Order for examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

2. 8 Wigmore, Evidence (McNaughton rev. 1961) § 2220 lists many analogous situations arising in the common law, but we are here concerned with a specific application of the term "party" found in Rule 35.

judge and after briefs had been submitted by the parties to the litigation, oral argument was heard.

A diagrammatic description of the history of the litigation is presented in order to show how the question arises.

Jennie Markiewicz, John Anthony Markiewicz, Edward Markiewicz (husband and father, respectively, of Jennie and John Anthony),

v.

The Greyhound Corporation, Robert L. Schlagenhauf, (the driver of the Greyhound bus), Contract Carriers, Inc., Joseph L. McCorkhill, (the driver of Contract Carriers' truck-tractor), National Lead Company (the owner of the trailer being pulled by Contract Carriers).

Diversity action seeking damages for the personal injuries suffered by Jennie and John Anthony Markiewicz, passengers on the Greyhound bus, and for loss of their services sustained by John Markiewicz, all resulting from bus collision with the trailer being pulled by Contract Carriers. The accident occurred July 13, 1962, on U. S. Highway 40 in Hendricks County, Indiana. Complaint was filed July 17, 1962, as amended November 8, 1962.

The Greyhound Corporation,

v.

Contract Carriers, Joseph. L. McCorkhill, National Lead Company,

v.

General Motors Corporation (third party defendant).

Cross-claim for damages to Greyhound's bus.

National Lead Company,

v.

Greyhound Corporation, Robert L. Schlagenhauf.

Cross-claim for damages to National's trailer.

———◆———

After the original complaint had been amended, Greyhound answered and filed its cross-claim. Contract Carriers and McCorkhill also answered the amended complaint.

Contract Carriers and McCorkhill filed a letter, pursuant to the district court's order, setting forth the specific allegations relied on in defense of Greyhound's cross-claim. Among these allegations is:

"4. The defendant, The Greyhound Corporation, carelessly and negligently employed and caused its driver, Robert L. Schlagenhauf, to operate said bus upon a public highway, although said Robert L. Schlagenhauf was not mentally or physically capable of operating said bus upon a public highway at the time and place when said accident occurred, which fact was known or should have been known to The Greyhound Corporation."

National Lead also filed its answer to the amended complaint together with an answer to Greyhound's cross-claim. One of the defenses asserted to Greyhound's

cross-claim was that the negligence of the driver of the bus, Schlagenhauf, proximately caused the damages to the bus owned by Greyhound.

National Lead's cross-claim alleged "that the defendant, The Greyhound Corporation acting by and through its said agent * * * and its said employee, [Schlagenhauf] * * * were guilty of carelessness and negligence in one or more of the following particulars:

* * * * * *

"(8) By permitting said bus to be operated over and upon said public highway by said defendant, Robert L. Schlagenhauf, when both the said Greyhound Corporation and said Robert L. Schlagenhauf knew that the eyes and vision of the said Robert L. Schlagenhauf was (sic) impaired and deficient."

On February 5, 1963, Contract Carriers, McCorkhill, and National Lead filed a joint petition for an order requiring Robert L. Schlagenhauf to submit to a series of mental and physical examinations. The petitions gave the following reasons for such request:

"(1) The defendant, Robert L. Schlagenhauf, was involved in a similar type accident near the town of Flatrock, Michigan, while driving a motorbus for the defendant, Greyhound Corporation.

"(2) The lights of the tractor trailer unit which was struck by the bus driven by the defendant Schlagenhauf, were visible from three-fourths to one-half mile to the rear of said vehicle.

"(3) The defendant Schlagenhauf saw red lights ahead of him for a period of ten to fifteen seconds prior to impact and yet did not reduce speed or alter his course."

The petition further alleged that separate examinations are required by multiple experts because no one expert could examine Schlagenhauf respective to all the conditions which related to his driving ability. In all four examinations were requested.

The district court on February 21, 1963, granted the petition and ordered Schlagenhauf to submit to mental and physical examinations by two named internists, two named ophthalmologists, three named neurologists and two named psychiatrists, despite the fact that only four examinations had been requested.

On March 14, 1963, Contract Carriers, McCorkhill, and National Lead filed supplemental petitions for examinations of Schlagenhauf. These were supplementary to the original petition allegedly because the mental and physical condition of Schlagenhauf became additionally in issue by virtue of National Lead's cross-claim filed subsequent to the petition of February 5.

On March 15, 1963, the district court issued an order (which superseded its February order) granting the supplemental petitions and ordering Schlagenhauf to appear before the nine medical experts for psychiatric and physical examinations. This court stayed the orders pending our disposition of the instant petition for writ of mandamus.

█ We are mindful of the stringent restrictions that have been placed on the issuance of the writ of mandamus, and its limitation to "the exceptional case where there is clear abuse of discretion or 'usurpation of judicial power' * *." Labuy v. Howes Leather, 352 U.S. 249, 257, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957).

█ In Labuy, the Supreme Court, on certiorari to the Seventh Circuit, in language that we deem pertinent to the instant petition said:

"As this Court pointed out in Los Angeles Brush Corp. v. James, 272 U.S. 701, 706 [47 S.Ct. 286, 71 L.Ed. 481] (1927): '* * * [W]here the subject concerns the enforcement of the * * * rules which by law it is the duty of this Court to formulate and put in force,' mandamus should issue to prevent such action thereunder so palpably improper as to place it beyond the scope of the rule invoked. As was said there at

page 707, were the Court '\* \* \* to find that the rules have been practically nullified by a district judge \* \* \* it would not hesitate to restrain [him]. \* \* \* ' " (352 U.S. at 256, 77 S.Ct. at 313).

Certainly the writ is not to be used as a substitute for appeal. Ex parte Fahey, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947). It should not be availed of to correct mere error in the exercise of conceded judicial power, although it may possibly be used to prevent usurpation of power, if "the lower court is clearly without jurisdiction." Ward Baking Co. v. Holtzoff, 164 F.2d 34, 36 (2nd Cir. 1947). The writ will not issue to permit this court to exercise the discretion entrusted by law to the district court. Fisher v. Delehant, 250 F.2d 265 (8th Cir. 1959); Goldberg v. Hoffman, 226 F.2d 681 (7th Cir. 1955).

Unless we are prepared to say that the district court was without power to enter the Rule 35 discovery order, or that the district court so clearly abused his discretion as to make the equities of this case truly extraordinary, precluding adequate relief by way of appeal, then the writ must and should be denied.

The Supreme Court in Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 61 S.Ct. 422, 89 L.Ed. 479 (1941), settled the question whether Rule 35 abridges substantive rights of a litigant in contravention of the limitations against such abridgment specified in the Rules Enabling Act of June 19, 1934, 28 U.S.C. § 723b–c. The Court held that the rule comes within the ambit of the statute regulating "procedure,—the judicial process for enforcing rights and duties recognized by substantive law \* \* \*."

Sibbach is important because the Court there held that Rule 35 constitutes the lawful authority necessary for the exercise of a district court's power to order mental and physical examinations of a party. Without such lawful authority, the Supreme Court had refused to recognize inherent power in federal courts to order physical examinations of the person. In Union Pac. Ry. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), the Court enunciated its rationale for denying inherent power:

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.' (141 U.S. at 251, 11 S.Ct. at 1001).

\* \* \* \* \* \*

"The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country." (141 U.S. at 252, 11 S.Ct. at 1001).

Today, in a number of our states, statutes, rules of court, and in some states, decisions, provide procedural techniques for the discovery of the mental and physical condition of a party similar to that provided for in Rule 35. Numerous decisions, both state and federal, attest to the soundness of the medical discovery provisions.[3] This type of discovery has most frequently been applied in situa-

3. For a thorough and scholarly discussion listing statutes and cases, see 8 Wigmore, Evidence § 2220 (McNaughton rev. 1961). See also: Developments In The

tions in which the moving party is a defendant asking for a mental or physical examination of a plaintiff so as to ascertain the extent of the latter's injuries. This was the situation in Sibbach. Indeed, the cases seem to proceed on the theory that a plaintiff who seeks redress for injuries in a court of law thereby "waives" a portion of his right to claim the inviolability of his person. In the interests of justice, the plaintiff, by seeking relief, must submit to a physical examination to aid in the ascertainment of the truth of his claims—he may not conceal, or make difficult of proof, that which is the very basis of his action and which is particularly within his knowledge.

The fact remains, however, that Rule 35 refers to examination of a "party." It would do violence to the clear wording of the rule to hold that only certain types of parties come within its terms. Obviously those drafting the rules, the Supreme Court, which adopted them, and the Congress that tacitly approved them as discussed in Sibbach, were all cognizant of the fact that "party" means both plaintiffs and defendants in civil litigation.

■■ It is well to point out that we do not believe Schlagenhauf became a "party" within the meaning of Rule 35 in so far as the present applications for examinations are concerned until the cross-claim filed by National Lead named him a party defendant (as to Contract Carriers and McCorkhill he is not yet a party.) The original suit by Markiewicz, et al., although listing Schlagenhauf as a party defendant, is separate and distinct from the cross-claims filed by the various defendants in the Markiewicz suit. Moreover, Schlagenhauf did not assume the status of a party defendant vis-a-vis Contract Carriers and McCorkhill merely by their listing his name in affirmative defenses to the cross-claim against them by Greyhound. Only upon the filing of the cross-claim by National

Lead did Schlagenhauf enter the litigation as a "party" within the ambit of Rule 35 with respect to National Lead's petition for mental and physical examinations.

■ Rule 35 requires that the person to be examined be a "party" and this requirement is basic to the rule's application. Dulles v. Quan Yoke Fong, 237 F.2d 496 (9th Cir. 1956); Fong Sik Leung v. Dulles, 226 F.2d 74 (9th Cir. 1955); Kropp v. General Dynamics Corp., 202 F.Supp. 207 (E.D.Mich.1962). We decline to follow the reasoning in Dinsel v. Pennsylvania R.R. Co., 144 F. Supp. 880 (W.D.Pa.1956), that appears to recognize inherent power in a federal court to order physical examinations of persons not parties to the pending action. Such reasoning cannot be accommodated to the language of the Supreme Court in Botsford and Sibbach. Furthermore, the very terms of Rule 35 restrict such examination to parties.

■ It should also be pointed out that Schlagenhauf was not a "party" to Greyhound's cross-claim merely by reason of his being an agent of Greyhound. The Supreme Court declined to adopt a proposed amendment to Rule 35 recommended by The Advisory Committee in its Final Report of October, 1955, that would have added the phrase, "or of an agent or a person in the custody or under the legal control of a party," to the rule.[4] In view of that Court's failure to adopt the recommended amendment we decline to extend the coverage of the rule by decision so as to include agents of parties.

What confronts us then is the question of the power of the district court to order, on the application of National Lead, mental and physical examinations of petitioner who became a party defendant by virtue of National Lead's cross-claim. In this regard we must answer the rhetorical question posed in 3 Ohlingers Federal Practice (Rev.Ed.) 610—:

"Finally, in Sibbach v. Wilson & Co. (1941), 312 U.S. 1, 61 S.Ct. 422, 85

Law—Discovery, 74 Harv.L.Rev. 942, 1022–27 (1961).

4. Moore Federal Practice ¶ 35.01, at 2552 (Supp.1962).

L.Ed. 479, by a five to four decision rendered on January 13, 1941, the Supreme Court declared that the rule is procedural in character and that it invades no 'substantive' right within the terms of the Enabling Act, as distinguished from a right which is merely 'substantial' or 'important'. To the suggestion that the rule offends the important right to freedom from invasion of the person the court replies that it ' * * * ignores the fact that a litigant need not resort to the federal courts unless willing to comply with the rule. * * *'

"This does not, however, answer the point; what of the litigant who does not resort to a federal court, has no intention of resorting to it, and does not wish to resort to it—a litigant, for instance, whose case is removed from a state court to a federal court, or who is made a defendant in a federal court against his will—is he exempted from the operation of the rule? The fact remains that Congress has conferred on the federal courts no power to make an order requiring a party to submit to a physical examination."

In the sense that Rule 37 precludes the use of a contempt citation for enforcement of an order to submit to a physical examination, Congress has not consented to the forcible physical examination of litigants in federal courts. It has, however, according to Sibbach, consented to district court orders directing a "party" to submit to a mental or physical examination in actions in which his "mental or physical condition" is "in controversy," if "good cause" for such examination be shown, and Congress has consented to appropriate orders by the district court (short of contempt) in those situations where the "party" refuses to submit to an examination.

In order that a federal district court may properly exercise its power to require a mental or physical examination of a party, Rule 35 requires that the party's mental or physical condition be "in controversy." In a negligence action involving personal injuries of a plaintiff (or of a defendant who by way of counterclaim or cross-claim seeks damages for personal injuries) there is ordinarily no question about that party's mental or physical condition being in controversy. The extent and permanency of his injuries is one of the ultimate fact issues in the case. In the situation we have here, however, where the party sought to be examined is a defendant who himself is making no claim for damages for personal injuries, the question whether his mental or physical condition is in controversy may be more difficult to decide. See Wadlow v. Humberd, 27 F.Supp. 210 (W.D.Mo.1939).

▮▮▮▮▮ The traditional respect for the inviolability of one's person that our society has consistently fostered—the concern for the individual's rights enunciated by the Supreme Court in the Botsford case, must be recognized. Mere lip service to the requirements of "in controversy" and "good cause" in Rule 35 falls short of a district court's duty to litigants, particularly those not voluntarily in court, to protect the individual's right of privacy. The rule was never intended to be used by adverse parties as a means to harass opponents with troublesome mental and physical examinations in the hope that by chance some mental or physical impairment might be discovered. While the party seeking Rule 35 discovery need not prove his case before obtaining an order for discovery, it is incumbent upon him affirmatively to demonstrate: (1) the probability that the adverse party's physical and mental condition is relevant and proximate in point of time to the underlying issues of the litigation and that such condition is in controversy; and (2) good cause to believe that a physical or mental examination would best serve to promote the ascertainment of truth and that other means of discovery or proof are less satisfactory considering the law's solicitude for a party's privacy.

Here the district court had before it a situation involving a catastrophic mo-

tor vehicle accident in which several persons were seriously injured (the Markiewicz, et al. suit potentially involves some $2,000,000.00 in damage claims), and allegations that petitioner had been involved in a similar accident in the past, that petitioner had admitted seeing lights some ten to fifteen seconds prior to impact but made no effort to stop the bus, that the driver of another vehicle was able to clearly see the lights of the truck and trailer over a considerable distance, and that the only human element utilized in the operation of the Greyhound bus involved in this accident was petitioner. In addition, National Lead alleged that petitioner's poor eyesight was a contributing factor in the accident.

We believe that the several allegations of negligence made in this case together with the additional matters brought to the attention of the district judge relating to the circumstances of the collision are so intertwined with the mental and physical condition of petitioner that that condition may be said to be in controversy in the action for damages asserted by National Lead in its cross-claim.

Although the "in controversy" requirement of Rule 35 is necessarily related to the showing of good cause required of a movant under the rule, the sufficiency of good cause to grant the motion is not restricted to a demonstration that the mental or physical condition of the adverse party is in controversy. The possibility of alternative proof available to the movant and the burden on the party sought to be examined must be balanced against the need for discovery. Furthermore, the number and kind of examinations ordered is subject to the "good cause" requirement. The number of examinations ordered should be held to the minimum necessary considering the party's right to privacy and the need 'for the court to have accurate information.

In summary, we conclude that a federal district court has the power under Rule 35 to require a party, whether cast in the role of plaintiff or defendant, to submit to a mental or physical examination upon compliance with the conditions of the rule; and in the case at bar that the district court acted within its power in ordering an examination under Rule 35. Petitioner's other contentions, e. g., alleged abuse of discretion in ordering an excessive number of examinations, must await review on appeal from a final judgment.

The petition is denied.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

I agree with the majority opinion that petitioner is a "party" subject to Rule 35. I have some doubt as to whether petitioner's eyes and mentality are "in controversy" within the meaning of the rule.

But my point of departure with the majority opinion is with respect to the "good cause" requirement of the rule.

In persuasive dictum in Guilford National Bank of Greensboro v. Southern Ry. Co., 297 F.2d 921, 924 (4th Cir. 1962), Judge Sobeloff said:

"There appear to be adequate policy reasons for imposing the good cause requirement in Rules 34 and 35. Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate."

The dictum expresses my view.

When the original order was entered, petitioner was not a party, and was made a party only by the later cross-complaint of National Lead Company. The second order issued upon motions merely stating that petitioner was involved in a similar accident while driving a Greyhound bus, that in the instant collision the lights of the tractor-trailer unit were visible from three-fourths to one-half mile, that petitioner saw the red lights of the truck for a period of ten to fifteen seconds prior to impact, and neither reduced his speed nor altered his course; and that unless the examinations were ordered,

"defendants will be without means to properly present evidence on this issue," and "no one will be able to testify upon this important issue."

No hearing was held to inquire into these statements so as to form a sound basis for subjecting petitioner to the examinations. A brief hearing might have indicated that there is an adequate alternate method of making proof of petitioner's physical and mental condition; and that the examinations sought now would not shed light on his condition at the time of the accident more than a year ago. On the other hand, the hearing might indicate substantial merit in the grounds urged for the examination order. In either event, the inquiry would establish an adequate basis for exercising the court's discretion as to whether or not the order ought to issue. The record here discloses no adequate basis for discretion.

This court will issue a writ of mandamus where it finds gross error amounting to an abuse of discretion, as in Chicago, Rock Island and Pacific Railroad Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955). In my view, on what the district court had before it, there was a gross error amounting to an abuse of discretion committed with respect to ordering the nine examinations, particularly the mental tests.

It is clear from reading Professor Wigmore that he is talking about personal injury cases in 8 Wigmore, Evidence § 2220(F) (McNaughton rev. 1961), and the need for preventing fraud through concealment of the true nature of one's injury. He quotes at length from Justice Schaefer's opinion in People ex rel. Noren v. Dempsey, 10 Ill.2d 288, 292–295, 139 N.E.2d 780 (1957), where the Justice is speaking about a plaintiff in a personal injury case. Justice Schaefer in that case says that a person claiming damages puts his physical condition in issue and it becomes a fact to be proved, like the fact of the impact in that case. Petitioner did not put his physical and mental condition in issue in the case at bar. These authorities do not compel denial of the writ.

It seems to me the constitutional right of personal privacy should not be transgressed in search for truth under Rule 35 in civil cases until the trial court has by inquiry established a sufficient basis upon which to exercise discretion as to whether an order for physical and mental examinations is the only adequate method of reaching the truth about a matter in controversy and whether the truth sought is relevant. That was not done here.