179 So.2d 505 (1965)
Milton D. LINDSEY, Plaintiff-Relator,
v.
Landry ESCUDE and Hartford Accident and Indemnity Company, Defendants-Respondents.
No. 1601.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1965.
Rehearing Denied November 17, 1965.
Simon, Trice & Mouton, by J. Minos Simon, Lafayette, for plaintiff-relator.
Pugh & Boudreaux, by Nicholls Pugh, Jr., Lafayette, for defendants-respondents.
En Banc.
TATE, Judge.
Under our supervisory jurisdiction writs were issued upon the plaintiff's application *506 to review an ex parte order of the trial court that he report for medical examination. The proceedings arise in a tort suit by the plaintiff Lindsey to recover for personal injuries sustained allegedly as the result of negligent driving by the defendant Escude.
On August 27th, the defendants (Escude and his liability insurer) presented a "Motion for Compulsory Physical Examination" to the District Court. To the motion was attached an affidavit by defendants' counsel to the effect that physical examination by an orthopedic specialist should be made to determine the nature and extent of the plaintiff's injuries.
Thereupon, without prior notice to the plaintiff, the trial court signed an ex parte order of same date as the motion, which ordered the plaintiff to: "submit to a physical examination, including the taking of X-rays and the usual and ordinary recognized medical tests that may be found necessary by the examining physician, Dr. Willard Dowell, on September 17, 1965, at 2:00 o'clock P.M., at his office situated in the Orthopedic Clinic, 3870 Convention Street, Baton Rouge, Louisiana, or any other qualified orthopedic specialist, without the plaintiff's attorney or representative being present * * *."
The ex parte order was then personally served upon the plaintiff, with a copy of the motion and order being mailed to his counsel.
The defendants contend that the procedure utilized by them is authorized by Article 1493 of the Code of Civil Procedure, which provides:
"In an action in which the mental or physical condition of party is in controversy, the court in which the action is pending or in which the judgment was originally rendered may order him to submit to a physical or mental examination by a physician, except as otherwise provided by law. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." (Italics ours.)
The statutory specification that an order for medical examination may be made only "upon notice to the party to be examined" cannot be interpreted to mean that such notice need not be given until after the order is issued. Obviously, if a statute did purport to authorize an ex parte order, such an order could never be effective without notification of it to the party ordered by it to submit to medical examination. There would thus be no need for the code article to specify that an order for medical examination could be issued only "upon notice" if an ex parte order with notice only after it were contemplated.
We agree with the plaintiff-relator, therefore, that the plain effect of the statutory requirement of notice specified by the code article is to require prior notice and an opportunity to be heard in opposition before the order for mental or physical examination is issued by the court. This construction is supported by the previous interpretation of the source article in the Federal Rules of Civil Procedure upon which LSA-C.C.P. Art. 1493 is based, as well as by a comparison of its provisions in this regard with the notice requirements in other discovery devices of the Code of Civil Procedure.
The Louisiana Code Article exactly duplicates Rule 35(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The federal rule likewise specified that an order for medical examination may be made "only on motion for good cause shown and upon notice to the party to be examined." Under this federal rule, a contradictory motion with notice[1] is required before the order may be issued. See 2A Barron and Holtzoff, Federal Practice and Procedure *507 (1961), Section 822, p. 480.[2] In interpreting an article of the Louisiana Code of Civil Procedure which is essentially based upon one of the federal rules, the Louisiana courts rely upon prior interpretations by the federal courts of the source federal rules as a persuasive guide to the intended meaning of such a Louisiana code article. Kay v. Carter, 243 La. 1095, 150 So.2d 27; Simon v. Castille, La.App. 3 Cir., 174 So.2d 660.
The positive intention of the Louisiana Code to retain the contradictory federal practice is most strikingly illuminated by a comparison of LSA-C.C.P. Art. 1493 with another Louisiana code article similarly adopting another discovery device from the federal rules.
Article 1493, providing for orders for medical examinations, was taken from Federal Rule 35(a), as noted. LSA-C.C.P. Article 1492, providing for discovery and production of documents and things, was taken from Federal Rule 34, which federal rule (just as did 35(a)) provides such a discovery order may issue upon motion "showing good cause therefor and upon notice to all other parties." [3]
However, when Rule 34 was adapted for Louisiana practice by incorporation as Article 1492, the "upon notice" requirement was deleted, so that an inspection order may be issued "Upon motion of any party showing good cause therefor, and subject to the provisions of Article 1452"the latter article permitting an opposing party, after service of an ex parte discovery device, to move to limit or condition or set aside a previously issued discovery order.[4] We regard this deliberate change from the federal practice as to this discovery device, and the apparent deliberate retention of the federal wording and practice as to LSA-C.C.P. Art. 1493 relating to orders for medical examinations, as a plain indication that the Law Institute and the Louisiana legislature intended to preserve the federal practice that orders for medical examinations be issued only after notice and an opportunity to be heard in opposition to the order.
The reasons for this are clear. An order for a medical examination is not granted as of right; there must be a showing of good cause, and the party to be examined should be able to have the examination made at a time and place without undue inconvenience to himself, as well as to oppose examinations as unnecessary, painful, or hazardous. 2A Barron & Holtzoff, cited above, Section 822.
In Woods v. Grain Dealers Mutual Insurance Co., La.App. 2 Cir., 159 So.2d 410, for instance, the appellate court held that there was no abuse of the trial court's discretion by its refusal to order the plaintiff to submit to examination by yet another specialist when the examination results of three doctors were already available to both parties. Again, a plaintiff may be able to assert good cause why his attorney *508 or some other person, should be present at the medical examination. See Simon v. Castille, La.App. 3 Cir., 174 So.2d 660.
Moreover, a compulsory examination of an individual involves a sensitive question touching closely upon the constitutionally protected sanctity of the person.
Prior to the federal rules, for considerations expressly based upon this age-old concept of the law of free men, it was settled doctrine that in federal proceedings an individual's person could not be examined against his will. See Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), as well as succeeding jurisprudence; cf. also Louisiana cases such as Kennedy v. New Orleans Ry. & Light Co., 142 La. 879, 77 So. 777. Even the source federal rule, 35(a), was barely held valid by the United States Supreme Court in Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1941), with the dissenting four Justices pointing out the ancient roots in our law of "the inviolability of a person", of "the liberties of the subject" of the old English Law, 61 S.Ct. 428. In its most recent expression on the subject, the United States Supreme Court has pointed out that this discovery device is the most limited of all, that the requirement of good cause is serious and is not met by pro forma allegations, and that a court should exercise discriminating application before ordering such a medical examination. Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).
This historical background enforces our belief that the legislature could not have intended to authorize ex parte orders requiring medical examinations of a party's person without prior notice to him and an opportunity to be heard, before the order issues requiring a person to submit to medical examination. We think, therefore, that the trial court was without authority to grant the defendants' motion for compulsory physical examination without prior notice to the plaintiff.
Accordingly, the invalid ex parte order to this effect is annulled. The matter is remanded for further proceedings not inconsistent with the views expressed herein. The defendants-respondents are assessed with the costs of the improvidently issued order for compulsory medical examination and of these supervisory proceedings to review it.
Order of trial court annulled.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] See Official Revision Comment b, LSA-C.C.P. Art. 963, for description of same.
[2] The treatise notes that in federal procedures notice should be given in accordance with Federal Rules 4, 5 and 6, which inter alia provide for five days notice prior to hearing, FRCP Rule 6(d), for motions other than those the federal rules themselves specify may be heard ex parte. See 1 Barron & Holtzoff, Federal Practice & Procedure (1960) Section 202. p. 760 for reference to such ex parte motions, which does not include a motion for medical examination. See also form recommended as appropriate for motion and order, Footnote 11, Barron & Holtzoff Section 822, cited in text, which is the contradictory motion with notice.
[3] Federal Rule 34 has likewise been interpreted to require a contradictory motion before the order for inspection may be issued. 2A Barron and Holtzoff, cited above, Sections 801 and 802, p. 464.
[4] Even with this change from the federal wording in the Louisiana rule, a recent decision of our Supreme Court indicates that there are serious questions as to the contradictory-hearing requirements or not of a motion to inspect under LSA-C.C.P. Art. 1492. Raia v. WWL-TV, 247 La. 1095, 176 So.2d 390.