# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-1621

———————

United States of America,      \*

       \*

      Appellee,     \*

       \*    Appeal from the United States

    v.            \*    District Court for the

       \*    District of Minnesota.

Israel Rayos-Parra,       \*

       \*

      Appellant.     \*

———————

Submitted:  October 8, 2002

Filed:  December 2, 2002

———————

Before HANSEN, Chief Judge, and HEANEY and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

———————

HEANEY, Circuit Judge.

Israel Rayos-Parra pled guilty on February 27, 1990 to one count of possession
with intent to distribute cocaine, but failed to appear at his sentencing hearing.  He
was subsequently arrested on October 18, 2001.  Rayos-Parra pled guilty for failure
to appear for sentencing, and was sentenced by the district court[1] to sixty-three
months in prison.  He appeals the district court's 1990 denial of his motion to

---

[1]The Honorable Paul A. Magnuson, United States District Court for the District
of Minnesota.

suppress evidence seized and statements made by Rayos-Parra during his arrest. We affirm.

## I.

On December 11, 1989, DEA Agent Jerry Kramer and Officer Bruce Giller of the Minneapolis-St. Paul International Airport (MSP) Police Department were on duty at the airport conducting surveillance. They observed Israel Rayos-Parra (Rayos) board a flight to Los Angeles. The next day, the officers were again conducting surveillance at MSP, and they observed Rayos exit a plane that had recently arrived from Los Angeles. Rayos was wearing the same clothes and carrying the same duffel bag as he had the night before. As Rayos was about to leave the terminal, the two officers approached him, identified themselves as law enforcement officers, and asked if they could talk to him for a few minutes. Agent Kramer testified that, although they had not been expecting to see Rayos at MSP, he was aware of Rayos's name.

There is some factual dispute as to the nature of the conversation between the officers and Rayos. The government contends that at the time the officers approached Rayos, they advised him that he was not under arrest and he was free to go. The officers spoke in English and Rayos responded in English, with a "little" accent. The officers asked questions about where he had come from. Rayos responded that he had been in Los Angeles. Officer Giller asked Rayos whether he could see his airline ticket, and Rayos produced a ticket in the name of I. Rayos. When asked whether he had any identification, Rayos produced a resident alien card in the name of Israel Rayos-Parra. Officer Giller asked Rayos where he lived, and Rayos stated California. Officer Giller asked Rayos if he had ever been to Minnesota before, and Rayos responded he had been in Minnesota one year earlier. Officer Giller then advised Rayos that he and Agent Kramer were narcotics officers, and asked if he would consent to a search of his carry-on bag. Officer Giller informed Rayos that they had

no warrant and that Rayos could refuse. Rayos asked, "You don't have a warrant?" to which Giller reaffirmed that they did not have a warrant, but were seeking permission to examine his carry-on bag. Rayos let them search the bag, and the officers found nothing.

Officer Giller again advised Rayos that they had no search warrant and that he could refuse, but asked if they could conduct a pat-down search. Rayos again stated, "You don't have a warrant?" to which Giller responded, "no," and again requested Rayos's consent for a pat-down. Rayos asked to go outside to conduct the search. Officer Giller responded that it was cold outside, and that it would be easier and warmer to conduct the search inside. At this point, Rayos stated, "I admit I am carrying drugs," took two or three steps away from the officers, unzipped his jacket and shirt, and displayed a package taped to his body. Officer Giller asked Rayos what the package contained, and Rayos responded that it contained drugs. Rayos was arrested and advised of his <u>Miranda</u> rights. The contents of the package tested positive for cocaine, and weighed 997 grams.

The appellant's recollection is somewhat different. By the appellant's account, the officers asked to search the carry-on bag. Rayos responded by asking whether they had a search warrant. The officers replied they did not, but they could get one. Rayos claims he did not give the officers permission to search the bag. He also testified that he was not advised by the officers that he could refuse the officers' request to search his person, and that the officers told him they could get a warrant to conduct a body search if they so desired. When Rayos asked to go outside to conduct the search, appellant claims the officers stated, "no, right here." Finally, Rayos testified that he only pulled out the package from his coat after one of the officers grabbed him by the jacket.

Rayos was released on a $10,000 bond on December 14, 1989. He entered into a plea agreement on February 27, 1990, where he agreed to plead guilty to a one-

count indictment of possession with intent to distribute cocaine. Pursuant to the plea agreement, Rayos preserved his right to appeal the district court's denial of his motion to suppress evidence seized and statements and admissions made by Rayos during the arrest. Rayos failed to appear for sentencing on May 15, 1990. He traveled to Sonora, Mexico, to take care of his ill mother, who died in August 1990. He returned to the United States in April 2001 to obtain employment in order to support his family living in Ensenada, Mexico. Rayos was arrested on October 18, 2001, for failing to appear for sentencing. He was sentenced to sixty-three months in prison: sixty months for the 1990 conviction, and three months for failure to appear for sentencing.

## II.

Appellant argues that he was unreasonably seized and searched in violation of the Fourth Amendment when the officers at MSP refused to search him outside the airport. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968)(quoting Union Pac. R. Co. v. Botsford, 141 U.S. 250, 251 (1891)). Although there are significant restrictions upon police officers when conducting even minimally-intrusive searches and seizures, United States v. Poitier, 818 F.2d 679, 682 (8th Cir. 1987), consensual encounters between police officers and private citizens do not invoke Fourth Amendment protections, Florida v. Bostick, 501 U.S. 429, 434-35 (1991).

The question in this case, then, is whether the officers' interactions with Rayos rose to the level of even a minimally-intrusive seizure. According to the government's account of the facts, the questioning would not have risen to a

minimally intrusive, <u>Terry</u>-type stop, <u>see</u> <u>Terry</u>, 392 U.S. 1 (1968), because Rayos cooperated with police requests throughout their conversation at the airport. Following the appellant's recitation of the facts, the interactions may have risen to the level of a minimally intrusive seizure, because the officers' actions may have amounted to a stop and frisk when they demanded the search take place immediately, and began the search without Rayos's consent.

Factual findings are reviewed by this court for clear error. <u>United States v. Spotts</u>, 275 F.3d 714 (8th Cir. 2002). If Rayos's conversation with the officers was consensual, then there was no Fourth Amendment violation. The district court resolved the factual dispute in the government's favor. There is nothing in the record to indicate that the district court erred in finding the officers' testimony more credible than Rayos's, and we do not think the district court's factual findings were clearly erroneous.

## III.

Because the district court did not clearly err in admitting appellant's admission to possessing cocaine, we affirm the sentence.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.